UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY GRAY,<br><br>                                          Plaintiff,<br><br>                    v.<br><br>JEANNE WOODFORD, et al.,<br><br>                                          Defendants. | Civil No.     05-CV-1475 J (CAB)<br><br>**REPORT AND RECOMMENDATION RE DEFENDANTS' MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**<br><br>**[Doc. # 75]** |

## I.  INTRODUCTION

Plaintiff Ricky Gray ("Plaintiff" or "Gray"), a state prisoner proceeding *pro se*, brought this action for violations of his civil rights under 42 U.S.C. § 1983.  Defendants moved to dismiss Plaintiff's Fourth Amended Complaint or, in the alternative, for a more definite statement.  Plaintiff opposed the motion.  For the reasons that follow, the undersigned Magistrate Judge recommends that the motions be **GRANTED IN PART** and **DENIED IN PART.**

## II.  FACTS

Plaintiff's case was transferred from the United States District Court for the Central District of California.  The last operative pleading in the Central District was the Third Amended Complaint ("TAC").  Plaintiff alleged numerous violations of his constitutional rights.  After the transfer, Defendants moved to dismiss for failure to state a claim under Rule 12(b)(6) and for a more definite

statement.  On November 17, 2005, the Hon. Leo S. Papas, Magistrate Judge assigned to the case at the time, found that the allegations in the TAC were scattered and did not satisfy the federal pleading rules.  On April 24, 2006, the Hon. Napoleon A. Jones, Jr., District Judge assigned to this case, adopted the recommendation, granted Defendants' motions, and granted Plaintiff leave to file his Fourth Amended Complaint ("FAC").  On December 5, 2005, the case was transferred to the undersigned.

Plaintiff filed the FAC on June 13, 2006.  The FAC is 52 pages long and alleges numerous claims for the First Amendment retaliation and Fourteenth Amendment due process and equal protection violations, including improper handling of Plaintiff's appeals; seizure of his personal property; lack of impartiality in the gang validation process; Plaintiff's placement in administrative segregation or the Security Housing Unit ("SHU"), etc.  Plaintiff divided his claims into thirteen counts, addressed in turn below.  On October 24, 2006, Defendants again filed a motion to dismiss or, in the alternative, for a more definite statement.

### III.  DISCUSSION

As a preliminary matter, the FAC leaves out some of Defendants sued in the TAC, namely Cook, Dexter, Eason, Gonzalez, Guillen, Hill, Hudson, Masters, Parks, Rodriguez, Salazar, J. Stokes, M. Stokes, and Trevino.  "[A]n amended pleading supersedes the original."  *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 445 F.3d 1132, 1143 (9th Cir. 2006) (citation omitted).  Therefore all claims and Defendants left out of the FAC are not part of this action.

Further, although the TAC names Fischer, Roman, Ruff and Tilton as Defendants, these individuals do not appear to have been served.

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  The FAC was filed on August 29, 2006.  The service period lapsed on December 29, 2006.  Defendants argue that the claims against the individuals who have not been served with the FAC should be dismissed.  In his opposition filed on January 3, 2007, Plaintiff requested no extensions of the service period or shown good cause for an extension.  Therefore any claims against individuals not served with the FAC are subject to dismissal without prejudice.

05cv1475

1

### A.    Motion to Dismiss for Failure to State a Claim

2      As noted above, the FAC groups its allegations in thirteen counts, each asserted against a

3 particular Defendant or Defendants.  The factual allegations for each count take up to several pages.  At

4 the beginning of each count, Plaintiff states that Defendants violated his First Amendment or Fourteenth

5 Amendment right, or both.  Plaintiff does not always specify the factual allegations which support each

6 particular violation.  Plaintiff also does not always specify which of the numerous rights, available under

7 the First or Fourteenth Amendments, is being referred to.  Some of the factual allegations appear to be

8 included as general background and not intended as an element of a claim.  Defendants address each of

9 the thirteen counts in turn.

10      Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be

11 granted."  Fed. R. Civ. P. 12(b)(6).  "A Rule 12(b)(6) dismissal motion 'can be granted only if it appears

12 beyond doubt that the plaintiff can prove no set of facts in support of his or her claim.'"  *Holley v.*

13 *Crank*, 400 F.3d 667, 674 (9th Cir. 2005) (internal citation omitted).  "All allegations of material fact are

14 taken as true and construed in the light most favorable to the nonmoving party."  *Tanner v. Heise*, 879

15 F.2d 572, 576 (9th Cir. 1989).  "[A] complaint should not be dismissed for failure to state a claim unless

16 it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

17 entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The dispositive issue is "not

18 whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

19 support the claims."  *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (quoting *Scheuer v. Rhodes*,

20 416 U.S. 232, 236 (1974)).

21      Civil rights complaints are construed liberally.  *See Holley*, 400 F.3d at 674.  Moreover, courts

22 "have an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the

23 pleadings liberally and to afford the petitioner the benefit of any doubt."  *Bretz v. Kelman*, 773 F.2d

24 1026, 1027 (9th Cir. 1985) (*en banc*) (internal citation omitted).

25      "However, a liberal interpretation of a civil rights complaint may not supply essential elements of

26 the claim that were not initially pled."  *Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266,

27 268 (9th Cir. 1982) (internal citation omitted).

28 ///

### 1.   Count One - Claims Against Defendant Zaragoza

Plaintiff alleges that upon his arrival to Centinela State Prison ("Centinela"), some of his personal property items were withheld.  (FAC, p. 7).  Plaintiff inquired of correctional sergeant Zaragoza about these items.  Zaragoza "became highly agitated, using disrespectful and abusive language." Plaintiff told Zaragoza that Zaragoza's conduct violated California Code of Regulations.  Zaragoza "singled out Plaintiff" and informed him that Plaintiff was in violation of the grooming standards because Plaintiff was not shaved.  Plaintiff asserted that he had a medical condition which excepted him from the standards.  To punish Plaintiff, Zaragoza moved him from the common holding cell to an "isolated" one and refused to issue Plaintiff lunch.

Approximately half an hour later, Sergeant Rodriguez came to talk to Plaintiff, examined Plaintiff's file and medical records, and transferred Plaintiff back to the common holding cell.  (FAC, p. 8).

Approximately a week later, Plaintiff returned to the administrative officer to receive his personal property.  At that time, Plaintiff gave Gonzalez, apparently another correctional officer, an inmate appeal regarding Zaragoza's alleged misconduct.  Gonzalez gave the appeal to Zaragoza for review.  Zaragoza then confiscated Plaintiff's "medically prescribed" boots and withheld "$700 worth" of Plaintiff's other personal property.  (FAC, p. 9).  Gonzalez subsequently denied Plaintiff's appeal regarding Zaragoza's actions.

With respect to the above facts, Plaintiff claims that Zaragoza acted out of retaliatory motives and violated Plaintiff's due process rights.  In particular, Zaragoza violated 15 CA ADC section 3084.5(e), which prohibits the review of an administrative appeal by the person who participated in the event being appealed.  *Id.*  Defendants move to dismiss Plaintiff's due process claims based on the alleged deprivation of property, his placement in administrative segregation, and the denial of his appeal. Defendants do not move to dismiss any of the claims that may arise under the First Amendment.

Plaintiff's due process claim against Zaragoza for intentional deprivation of Plaintiff's property is not legally cognizable.  "[A]n intentional deprivation of property does not give rise to a violation of the Due Process Clause if the state provides an adequate post-deprivation remedy.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  "California Law provides an adequate post-deprivation remedy for any property

05cv1475

1  deprivations." *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994); *see also* Cal.Gov't Code §§ 810-

2  895. Because Plaintiff had a state post-deprivation remedy, Zaragoza did not violate due process.

3  Next, Plaintiff's due process claim for being transferred to administrative segregation also fails

4  because Plaintiff has not alleged a protected liberty interest. Prisoners may not be deprived of life,

5  liberty or property without due process of law. *See Wolff v. McDonnell*, 418 U.S. at 539, 556 (1974).

6  "The Due Process clause provides prisoners two separate sources of protection against unconstitutional

7  state disciplinary actions." *Ramirez v. Galaza,* 334 F.3d 850, 860.

8  "First, a prisoner may challenge a disciplinary action which deprives or restrains a state-created

9  liberty interest in some 'unexpected manner.' " *Id.* (citation omitted) (citing *Sandin v. Conner,* 515 U.S.

10  472, 483-84 (1995)). Although the federal Constitution "provides no liberty interest to be free from ad-

11  seg," such an interest may be created by the state. *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993)

12  (citations omitted). State-created liberty interests "will be generally limited to freedom from restraint."

13  *Sandin,* 515 U.S. at 484. "[T]he touchstone of the inquiry into the existence of a protected, state-created

14  liberty interest in avoiding restrictive conditions of confinement is not the language of regulations

15  regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary

16  incidents of prison life.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005).

17  "Second, a prisoner may challenge a state action which does not restrain a protected liberty

18  interest, but which nonetheless imposes some 'atypical and significant hardship on the inmate in relation

19  to the ordinary incidents of prison life.' " *Ramirez,* 334 F.3d at 860-61. If the hardship is sufficiently

20  significant, then the court must determine whether the procedures used to deprive that liberty satisfied

21  Due Process. *Id.* (citation omitted).[1]

22    There is no single standard for determining whether a prison hardship is atypical and significant,
23    and the 'condition or combination of conditions or factors ... requires case by case, fact by fact
      consideration.' Three guideposts cited in *Sandin's* analysis, however, provide a helpful
24    framework: 1) whether the challenged condition "mirrored those conditions imposed upon
      inmates in administrative segregation and protective custody," and thus comported with the
25    prison's discretionary authority; 2) the duration of the condition, and the degree of restraint
      imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's
26    sentence.

27    [1]The Ninth Circuit noted that a significant hardship may be present where the isolation lasted for
28  two years, plaintiff's segregated unit was overcrowded and violent, the isolation severed ties to the
    plaintiff's family, and the plaintiff was made a patient of psychiatric programs. *Ramirez,* 334 F.3d at
    861.

1

2  *Ramirez*, 334 F.3d at 861 (citation omitted).  Segregated confinement, when it does not exceed similar

3  confinement "in either duration or degree of restriction," does not "work a major disruption in [a

4  prisoner's] environment."  *Sandin,* 515 U.S. at 486.

5          Plaintiff has not specified what state regulations created his protected liberty interest in being free

6  from administrative segregation.  Further, Plaintiff has also failed to demonstrate an atypical or

7  significant hardship.  Gray provides no details regarding the circumstances of his confinement to

8  administrative segregation by Zaragoza.  The allegations do not demonstrate that the confinement was

9  prolonged or highly restrictive, or that it resulted in a major disruption in Gray's environment.  Therefore

10  Gray fails to state a due process violation claim.

11          Gray states a due process violation regarding the assignment of his appeal to Zaragoza for review

12  and denial of his appeal.  Defendants argue that "inmates lack a separate constitutional entitlement to a

13  specific prison grievance procedure."  *Ramirez*, 334 F.3d at 860 (citing *Mann v. Adams*, 855 F.2d 639,

14  640 (9th Cir. 1988)).  Plaintiff, however, does not claim a right to a specific grievance procedure.

15  Plaintiff appears to claim that the procedure already in place is not fairly applied.  Under California

16  regulations, "[f]ormal appeals shall not be reviewed by a staff person who participated in the event or

17  decision being appealed."  15 CA ADC § 3084.5(e).

18          At least some district courts have held that "[t]he state of California has not created a protected

19  interest in an administrative appeal system in prison."  *Gonzalez v. Mason,* 2007 WL 2221081, 3 (N.D.

20  Cal. 2007).  However, even if section 3084.5 does not in and of itself create a liberty interest, Plaintiff

21  appears to have alleged an atypical and significant hardship resulting from the violation of this section in

22  his case.  *See Ramirez,* 334 F.3d at 860-61.  Assigning an appeal for review to the alleged malfeasant

23  imports the obvious risk of partiality.  Prisoners have the right to petition the government for a redress of

24  grievances under the First Amendment.  *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995).  Courts

25  have always been very zealous in protecting the free speech rights.  Prisoners' free speech is likely to be

26  chilled if they know that their complaints may be reviewed by the very person they complain about.

27  Therefore Gray has stated a due process claim regarding the review and denial of his appeal under these

28  circumstances.

05cv1475

1   Defendants do not specifically move to dismiss Plaintiff's retaliation claim under the First

2   Amendment.  Count One of the FAC specifies that the facts are alleged in support of both the Fourteenth

3   Amendment and First Amendment claims.  (FAC, pp. 7, 9:21-28).  Defendants move to dismiss the

4   claim regarding the denial of Plaintiff's appeal as a due process claim.  Plaintiff's FAC, however, also

5   alleges retaliation in violation of the First Amendment.  (FAC, pp. 7, 9:21-28).[2]

6   Gray has stated a claim for First Amendment retaliation against Zaragoza.[3]

7   Within the prison context, a viable claim of First Amendment retaliation entails five basic
    elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

8   because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's
    exercise of his First Amendment rights, and (5) the action did not reasonably advance a

9   legitimate correctional goal.

10  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  Plaintiff alleged that he filed an appeal

11  against Zaragoza.  Prisoners' right First Amendment "right[s] to file prison grievances" are of

12  "fundamental importance."  *Id.* at 567.  Gray's alleged conduct is therefore protected by the First

13  Amendment.  Gray also alleged that Zaragoza retaliated against him for the filing of the appeal, and that

14  Plaintiff was harmed by Zaragoza's confiscating Plaintiff's property.  Gray stated that Zaragoza's actions

15  violated the applicable California regulations.  Accordingly, Plaintiff has alleged a retaliation claim.

16  ## 2.   Count Two - Claims Against Defendant Sidhu

17  Plaintiff fails to state a claim against correctional officer Sidhu.  Gray alleges that sometime

18  during March 2004, Sidhu told Plaintiff that another prison official did not want Plaintiff in her housing

19  unit because Plaintiff had the reputation of a "jailhouse lawyer."  (FAC, p. 12).  Sidhu then told Plaintiff

20  to pack his belongings for a move.  Plaintiff filed an appeal regarding the actions of Sidhu and other

21  involved prison officials.  Somewhat confusingly, Gray alleges that "later," Sidhu told him to pack and

22  transferred Plaintiff to administrative segregation.  Sidhu also "fabricated a pretextual confidential memo

23  as to the purported basis for plaintiff's placement."  (FAC, p. 12).  Plaintiff was subsequently

24  interviewed by Captain Dexter, who found "no legitimate justification" for Plaintiff's placement.

25

26      [2]  "Since *Sandin,* this court has reaffirmed that prisoners may still base retaliation claims on
    harms that would not raise due process concerns."  *Hines v. Gomez,* 108 F.3d 265, 269 (9th Cir. 1997).

27  Therefore Plaintiff's First Amendment claim and Fourteenth Amendment claim based on the denial of
    his appeal must be examined independently of each other.

28      [3]Defendants do not move to dismiss this claim.  The Court will review it *sua sponte* under 28
    U.S.C. § 1915A.

Plaintiff claims that Sidhu retaliated against Plaintiff in violation of Plaintiff's First Amendment rights "for exercise thereof Fourteenth Amendment."  (FAC, p. 12).

Although Plaintiff characterizes his claim as one for First Amendment retaliation, Defendants move to dismiss it as a Fourteenth Amendment claim.  As noted above, a prisoner plaintiff alleging a due process claim based on placement in administrative segregation is required to show an atypical and significant hardship.  *Sandin,* 515 U.S. 472, 484-86.  Plaintiff only states that he was placed in administrative segregation, but does not describe any accompanying hardships.  Therefore his due process claim fails.

Plaintiff's allegations, liberally construed in the light most favorable to Plaintiff, state a retaliation claim against Sidhu.  As mentioned above, "prisoners may still base retaliation claims on harms that would not raise due process concerns."  *Hines,* 108 F.3d at 269.  Gray has alleged that he engaged in the protected conduct of submitting an administrative appeal against Sidhu, and that Sidhu placed Plaintiff in administrative segregation solely out of retaliatory motives.  Therefore this claim should be allowed to proceed.

### 3.    Count Three - Claims Against Giurbino

Plaintiff's allegations state equal protection claims against Giurbino as discussed below. Defendant Giurbino is the Warden of Centinela.  Gray alleges that Giurbino appointed African-American members of the Men's Advisory Committee instead of allowing them to be elected; during prison lockdown, allowed Hispanic prisoners to receive packages and canteen items, but denied the same to African-American prisoners; ignored appeals submitted by African-American prisoners; assigned properly working telephones for the use by Hispanic prisoners, but assigned inoperative telephones for the use by African-American prisoners; segregated shower use by race; and denied appeals submitted by African-American inmates while showing favoritism toward Hispanic prisoners.  (FAC, pp. 13-16). Plaintiff alleges that Giurbino's actions violated his rights under the First Amendment and the equal protection and due process rights under the Fourteenth Amendment.

It is not clear how Defendant's actions violated Plaintiff's First Amendment rights.  Therefore a First Amendment claim is not properly stated.

Defendants move to dismiss the Fourteenth Amendment claim because Plaintiff has not shown

how he was injured by Giurbino's actions, and therefore lacks standing to bring the claims.  Standing is the "irreducible constitutional minimum" for bringing a judicial action, and requires an injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).  The "Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  Plaintiff alleges that Giurbino implemented a number of racially discriminatory practices "toward African ancestry (Black) prisoners *including* Plaintiff."  (FAC, p. 13) (emphasis added).  Therefore Plaintiff alleged an injury to himself and, consequently, standing.

Plaintiff sufficiently alleges equal protection violations based on the following: disparate treatment of Hispanic and African-American inmates during lockdown, when the Hispanic inmates were allowed to receive packages and canteen items, whereas African-American inmates were not; racially segregated use of showers for African-American and Hispanic prisoners; racially segregated use of phones by African-American and Hispanic prisoners, when Hispanic prisoners were assigned phones which worked, and African-American were assigned inoperative phones; and denials of the appeals filed by African-American inmates while favoring Hispanic inmates.  With respect to the above, Plaintiff has shown that inmates of two different races were treated differently based on their race when they were in the same circumstances.  At the motion to dismiss stage, this is sufficient to let the claims proceed.

Gray fails to state any claim with respect to the alleged appointment, instead of election, of African-American representatives of the Men's Advisory Committee.  Plaintiff apparently attempts to state a due process claim.  Gray, however, has failed to allege a protected liberty interest.  Plaintiff has not indicated, and this Court is not aware of any, federally created liberty interest in inmates' right to elect the members of an advisory committee.  Liberty interests may also be created by state prison regulations. *Meachum v. Fano*, 427 U.S. 215, 223-27 (1976).  The interests created by state prison regulations, however, are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484 (citations omitted).  Gray has not alleged any

1   significant hardship from being unable to elect the Advisory Committee members.  In the absence of a

2   protected liberty interest or a significant hardship, Gray's due process claim fails.

3                    **4.      Count Four - Claims Against Defendant Maldonado**

4           According to the FAC, Maldonado is an "institutional gang investigator."  (FAC, p. 2).  Plaintiff

5   alleges that Maldonado ordered J.S. Hill, apparently another correctional officer, to search the cells of all

6   African-American Muslim prisoners and confiscate "all books, phone/address book and written material

7   for 'review.' "  (FAC, p. 17).  Maldonado is alleged to harbor "an intense personal bias and animosity

8   toward black prisoners in general and black Muslims in particular."  *Id.*  On August 10, 2004, Plaintiff's

9   cell was searched, and all Plaintiff's "black-oriented material" confiscated.  *Id.*  Plaintiff submitted an

10  administrative appeal regarding the search and confiscation.  The CDC Director's Office ordered

11  Maldonado to explain why the confiscated material was considered contraband or to return it to Plaintiff.

12  Maldonado and Giurbino ignored the order and have not returned the material to Plaintiff.

13          On March 30, 2005, Maldonado informed Plaintiff that because of Plaintiff's prior filing of

14  administrative appeals, he will be placed in administrative segregation pending an investigation of his

15  possible gang activities.  (FAC, p. 18).  Plaintiff has never engaged in gang activities during his

16  incarceration at Centinela.  According to Gray, Maldonado's investigation "appear[ed]" to be based on a

17  document that Maldonado had in his possession for the previous six months.  Plaintiff also alleges that

18  his placement in administrative segregation violated certain state regulations, *e.g.,* right to an interview

19  with a staff member.  Based on the above, Plaintiff alleges violations of his First Amendment and

20  Fourteenth Amendment rights by Maldonado.

21          Plaintiff states a First Amendment claim for retaliation.  *See Rhodes*, 408 F.3d at 567-68.  Gray

22  alleges that Maldonado placed him in administrative segregation because Plaintiff had filed

23  administrative appeals.  According to the FAC, Maldonado himself informed Plaintiff that the filing of

24  the appeals was the reason for the segregation.  Gray has sufficiently alleged that he engaged in protected

25  conduct and that he was placed in administrative segregation because of this conduct.  Gray's allegations

26  regarding Maldonado's having the incriminating information for a period of time, but acting on it only

27

28

1  after the appeals were filed, appear sufficient to indicate lack of a legitimate penological purpose.[4]

2       Plaintiff also states an equal protection claim.  Plaintiff alleges that Maldonado has a bias against

3  African-American inmates, and that Plaintiff's cell was searched and certain personal property

4  confiscated because Plaintiff is an African-American Muslim.

5       Plaintiff's due process claim, however, is not properly alleged.  Plaintiff asserts that he was

6  placed in administrative segregation in violation of a number of state regulations.  As noted above,

7  however, constitutionally protected liberty interests are "limited to freedom from restraint which . . .

8  imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison

9  life." *Sandin,* 515 U.S. at 484.  Gray complains that he was placed in administrative segregation without

10 an interview with a staff member, a hearing or an inquiry.  The segregation lasted for 90 days.  (FAC, p.

11 90).[5]  The 90-day length of the segregation alone does not appear to constitute an "atypical and

12 significant hardship" required under *Sandin*.  Therefore no claim is stated.

13      Finally, Plaintiff's allegations that both Maldonado and Giurbino failed to comply with the CDC

14 Director's order to return Plaintiff's written material do not state a due process violation.   As discussed

15 above, "an intentional deprivation of property does not give rise to a violation of the Due Process Clause

16 if the state provides an adequate post-deprivation remedy." *Hudson*, 468 U.S. at 533.  "California Law

17 provides an adequate post-deprivation remedy for any property deprivations." *Barnett*, 31 F.3d at 816-

18 17.  Finally, Plaintiff did not describe any hardships resulting from the confiscation.  Therefore based on

19 these allegations, no process was due.

20          **5.     Count Five - Claims Against Defendant Maldonado**

21      Plaintiff's Count Five repeats the allegations against Maldonado in Count Four, in particular, the

22

23          [4]Plaintiff's opposition also indicates that Plaintiff intended to allege a First Amended free speech
24 claim based on the confiscation of his written material.  Defendants did not move to dismiss this claim.
   Prison officials may infringe on a prisoner's constitutional rights if the infringement "is reasonably
25 related to legitimate penological interests." *See Turner v. Safley,* 482 U.S. 78, 89 (1987).  This principle
   has been applied to claims for confiscation of written material brought under the First Amendment.  *See*
26 *Stefanow v. McFadden,* 103 F.3d 1466, 1472-75 (9th Cir. 1996).  The FAC does not specifically allege
   such a claim.  Although the pleading refers to the confiscation of the material, this reference appears to
27 serve as the general background for the other claims.

28          [5]Later in his FAC, Plaintiff states that he is "an indeterminately sentenced life term prisoner."
   (FAC, p. 30).  Therefore 90 days in administrative segregation does not affect the duration of his
   sentence and impose a significant hardship. *See Ramirez*, 334 F.3d at 861.

05cv1475

allegations regarding the search of the cells of African-American Muslim inmates and confiscation of Plaintiff's written material; Maldonado and Giurbino's failure to return the confiscated materials; and Plaintiff's placement in administrative segregation pending an investigation of his gang activities without due process and in retaliation for his filing of administrative appeals.[6]  (FAC, pp. 22-29).

Count Five adds certain details, such as that although Maldonado has been conducting an investigation of Plaintiff's purported gang activities for over thirteen months, no gang involvement has been identified.  (FAC, p. 26).  Plaintiff therefore sees the investigation as a personal vendetta by Maldonado: "In truth, Plaintiff allege[s] and claims that M. Maldonado is playing captain Ahab to Plaintiff Moby Dick."  (FAC, p. 26).  The substance of the claims does not change.  Therefore these allegations in Count Five should be considered part of the corresponding claims in Count Four.[7]

### 6.    Count Six  - Claims Against Defendants Sidhu, Vargus, Maldonado and Giurbino

Plaintiff alleges that the actions of Defendants Sidhu, Vargus,[8] Maldonado and Giurbino jeopardize his chances of being paroled.  Plaintiff is an "indeterminately sentenced life term prisoner." (FAC, p. 30).  Plaintiff "must appear before the State Parole Board for lifer [sic] parole consideration hearing."  (FAC, p. 30).  Plaintiff alleges that his placement in the administrative segregation will negatively impact the outcome of the hearing.  "No prisoner undergoing an indeterminate life sentence has ever paroled from the SHU while undergoing an indefinite/indeterminate SHU term, to Plaintiff's personal and empirical knowledge."  (FAC, p. 30).  Plaintiff therefore claims a due process violation.

Plaintiff's due process claim is not stated.  As noted above, under *Sandin* courts look at the following factors: "1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's

---

[6]In Count Five, Plaintiff also alleges that Maldonado was improperly assigned to review an appeal Plaintiff filed against Maldonado.  The appeal was initiated after Plaintiff was denied a transfer from Centinela.  It is not clear what claim Plaintiff bases on these factual allegations.

[7]Defendants also argue that inmates may be placed in administrative segregation when their presence in the general population jeopardizes the integrity of an investigation.  15 CA ADC § 3335(a). Once an inmate is validated as a gang member, he may be placed in a Security Housing for an indeterminate term.  15 CA ADC § 3341.5(c)(2)(A).

[8]Vargus is a correctional lieutenant.

1  discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3)

2  whether the state's action will invariably affect the duration of the prisoner's sentence." *Ramirez*, 334

3  F.3d at 861 (citation omitted).  Plaintiff alleges that he has been placed in the SHU, that his placement

4  term is indeterminate, and that his placement in the SHU may weigh against his parole.  Gray has not

5  specified the additional hardships imposed by his placement in the SHU; has not indicated the duration

6  of the condition and the degree of restraint; and has not shown that the duration of his sentence will be

7  inevitably affected by this placement.

8       Gray relies on *Wilkinson v. Austin*, 545 U.S. 209 (2005), which found a liberty interest in

9  avoiding assignment to state's "supermax" prison because such assignment imposed an atypical and

10  significant hardship in relation to ordinary incidents of prison life.  Almost all human contact was

11  prohibited, duration of the assignment was indefinite, and the otherwise eligible inmate was disqualified

12  from parole consideration.  Gray, however, has not alleged a similar hardship.  Inmates placed in the

13  SHU for an indeterminate term are reviewed by a classification committee at least every 180 days for

14  consideration of release to the general population.  15 CA ADC § 3341.5(c)(2)(A)(I).  Inmates may be

15  released from a gang-related indeterminate SHU term if they are determined to have been inactive for

16  five years or after debriefing about the gang.  *See id.* § 3387.1(c).

17       Gray has not shown that under the California regulations, his placement in the SHU will

18  definitely prejudice him at the parole hearing.  He only indicated that to his knowledge, no inmate was

19  ever paroled while undergoing an indeterminate SHU term.  Plaintiff, however, does not contend that he

20  will never be released from the SHU and considered for parole at that time.  Therefore Gray's alleged

21  circumstances do not present a drastic departure from the ordinary course of prison life.  Accordingly,

22  Plaintiff's allegations do not state a due process violation.

23              **7.    Count Seven - Claims Against Gibson**

24       Plaintiff alleges that on March 22, 2005, Defendant R. Gibson ("Gibson"), a correctional

25  sergeant, escorted Plaintiff to the Receiving and Release Office to pick up Plaintiff's legal materials.

26  (FAC, p. 31).  Plaintiff had previously submitted an administrative appeal to Gibson regarding a property

27  issue.  When Gray inquired about the status of the appeal, Gibson became "irate," verbally abused Gray

28  and denied him access to the legal materials.  Plaintiff needed the materials for a small claims court

1    action.  Because Plaintiff could not retrieve his documents, he lost the action.  In addition, Gibson

2    prepared a "false serious disciplinary rule violations report" charging Plaintiff with disruptive behavior.

3    Gibson prepared the report because he needed an excuse for his denial of the access to Plaintiff's files,

4    and in retaliation for the filing of the administrative appeal.  Plaintiff was subsequently found not guilty

5    of the charges in the report.  Plaintiff alleges violations of his "First Amendment rights and retaliatory

6    acts for exercise thereof."  (FAC, p. 31).

7        Plaintiff fails to state any claims against Gibson.  Plaintiff's claim for retaliation is not properly

8    alleged.  The Ninth Circuit has held that although a plaintiff in a First Amendment retaliation action does

9    not have to allege that the plaintiff's speech was "actually inhibited or suppressed," the plaintiff does

10   have to demonstrate that the First Amendment rights "were chilled, though not necessarily silenced."

11   *Rhodes*, 408 F.3d at 562.  The FAC states that Plaintiff was found not guilty of the charges in the rule

12   violations report.  Gray does not explain what harm he suffered or complain that his rights were chilled.

13   Therefore Gray has not stated a retaliation claim.[9]

14       Plaintiff's claim for denial of access to the courts also fails.  "[A]ccess to the courts means the

15   opportunity to prepare, serve and file whatever pleadings or other documents are necessary or

16   appropriate in order to commence or prosecute court proceedings affecting one's personal liberty."

17   *Lewis v. Casey*, 518 U.S. 343, 384 (1996).  The right of access, however, is only guaranteed for certain

18   types of claims: direct and collateral attacks upon a conviction or sentence, and civil rights actions

19   challenging the conditions of confinements.  *See id.* at 355.  "Impairment of any *other* litigating capacity

20   is simply one of the incidental (and perfectly constitutional) consequences of conviction and

21   incarceration."  *Id.*  Plaintiff's underlying action was a small claims case and did not pursue an attack on

22   his conviction or claims based on the conditions of his confinement.  Therefore the constitutional right

23   of access to the courts does not cover his claim.

24       Finally, to the extent that the FAC attempts to state an Eighth Amendment claim with respect to

25   Gibson's alleged verbal abuse, this claim is not cognizable.  Verbal harassment generally does not

---

[9]Defendants also argue that the finding of not guilty moots Plaintiff's claim.  Standing is the "irreducible constitutional minimum" for bringing a judicial action, and requires an injury in fact, causation, and redressability.  *Lujan*, 504 U.S. at 560.  Because Plaintiff was found not guilty of the charges, he cannot show an injury.

1   violate the Eighth Amendment.  *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir. 1987) (citations

2   omitted).

3                   **8.       Count Eight - Claims Against Defendant Gardner**

4           Plaintiff alleges that Gardner placed "false and slanderous information" in Plaintiff's file.  This

5   information was used to impose "adverse administrative quasi-punitive sanctions and conditions upon

6   Plaintiff."  (FAC, p. 33).  As a result, Plaintiff has been housed in the SHU as a gang member.  Plaintiff

7   claims that Gardner's actions denied him "the fundamental fairness and due process."  (FAC, p. 33).

8           Plaintiff's claim is vague.  Courts are not required "to accept as true allegations that are merely

9   conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State*

10  *Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).  The due process claim based on Plaintiff's validation as a

11  gang member is subject to the lower "some evidence" standard of *Superintendent v. Hill.*  472 U.S. 445,

12  455 (1985).

13          California's policy of assigning suspected gang affiliates to the Security Housing Unit is not a
            disciplinary measure, but an administrative strategy designed to preserve order in the prison and
14          protect the safety of all inmates.  Although there are some minimal legal limitations, the
            assignment of inmates within the California prisons is essentially a matter of administrative
15          discretion.

16  *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003).  Plaintiff does not explain what the information is

17  and why it is slanderous.  He only states that the information "has no legitimate indicia of reliability, and

18  that furnishing and use of the information deprives Plaintiff of the fundamental fairness and due

19  process."  (FAC, p. 33).  Plaintiff's allegations appear too conclusory to support a claim.

20          This count of the FAC also fails to show that the placement in the SHU imposed a significant

21  and atypical hardship on Plaintiff.  Although Gray alleges that the placement of the slanderous

22  information in his records had a "severe adverse effect," this allegation is too general.  (FAC, p. 33).

23  Gray only states that his term in the SHU is indeterminate.  That is not sufficient to demonstrate that

24  Plaintiff's current housing exceeds the general restrictions imposed by his sentence.  *Sandin,* 515 U.S. at

25  484.  Therefore a due process violation is not indicated.

26          In addition, Defendants argue that this claim is procedurally barred because Plaintiff has also

27  filed two related petitions for writ of habeas corpus in the Los Angeles Superior Court.  Defendants,

28  however, do not attach copies of the petitions.  Therefore the undersigned cannot compare the claims

                                                                  15

1   asserted in this action to the habeas claims.  Defendants also point out that on page 46 of the FAC,

2   Plaintiff states that the false information used to validate him as a gang member was investigated and

3   found invalid.  The Court is reluctant to rely on this statement because it is not entirely certain that

4   Plaintiff refers to the same information.  In any event, Plaintiff's claim fails because no significant

5   additional hardship has been shown.

6              **9.      Count Nine - Claims Against Defendants Daugherty, Degeus, and Loera**

7         Plaintiff alleges that Defendants W. Daugherty ("Daugherty"), D.J. Degeus ("Degeus"), and

8   M.G. Loera ("Loera") rejected or denied to process his administrative appeals for pretextual reasons.

9   (FAC, p. 34).  Degeus is an appeals coordinator.  (FAC, p. 3).  Loera and Daugherty are assistant appeals

10  coordinators.  (FAC, pp. 2, 4).  Some of the appeals submitted by Plaintiff concerned allegations of

11  misconduct by the department personnel.  Daugherty, Degeus and Loera also "routinely" assigned the

12  appeals for review to the persons who had committed the alleged misconduct.  (FAC, p. 34).  Plaintiff

13  asserts that these Defendants therefore aided the malfeasants in violating Plaintiff's constitutional rights.

14  Gray states a claim for due process violations against Daugherty, Degeus and Loera.  Defendants argue

15  that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure."

16  *Ramirez*, 334 F.3d at 860 (citing *Mann*, 855 F.2d at 640).  Plaintiff, however, does not claim a right to a

17  specific grievance procedure.  Plaintiff alleges that the prison has an administrative appeal process

18  already in place.  Prisoners have the right to petition the government for a redress of grievances under

19  the First Amendment.  *See Bradley*, 64 F.3d at 1279.  Plaintiff attempted to use this process.  The prison

20  staff responsible for processing the grievances treated his appeals in an unfair manner by not responding

21  or issuing denials for pretextual reasons, or by assigning the grievances for review to the alleged

22  wrongdoers in violation of state regulations.  *See* 15 CA ADC § 3084.5(e).  As concluded above,

23  assignment of appeals for review by the alleged malfeasants may result in a hardship.  Therefore Plaintiff

24  may prove a due process violation.

25        In the same count, Gray also asserts that Degeus and N. Grannis ("Grannis"), the "chief of inmate

26  appeals," purported to limit him to one appeal per month, without a prior notice or hearing.  (FAC, p.

27  35).  Gray alleges violations of the right to petition the government for redress of grievances, right of

28  access to the courts, and due process.  With respect to Degeus and Grannis, Gray has not stated any

1   claims because he has not alleged that he needed to file more than one appeal a month.  In addition, the

2   FAC only asserts that Degeus and Grannis "purported" to limit the number of Grays' appeals.  It remains

3   unclear if the limitation was actually imposed and injured Plaintiff.

4          **10.    Count Ten - Claims Against Rimmer, Maldonado, Fischer and Ruff**

5          Gray alleges that his file contains confidential information provided by informants.  (FAC, p. 36).

6   Plaintiff does not specify what this information is.  He asserts, however, that the information was at

7   some point determined to be false.  In spite of this determination, R. Rimmer ("Rimmer"), Maldonado,

8   Everette W. Fischer ("Fischer") and Michael Ruff ("Ruff") continue to use this information against

9   Plaintiff "for exercising his First Amendment right to seek redress."  (FAC, p. 36).

10          Further, on February 23, 2005, Maldonado wrote a confidential memo, purportedly based on

11   evidence supplied by informants, and indicating Plaintiff's gang associations.  Rimmer, Fischer, Roman

12   and Ruff are members of a committee on validation hearings.  Although the committee is required to

13   verify the information received before acting on it, these individuals accepted the information without an

14   investigation.  Further, Defendant T. Willis ("Willis"), a correctional sergeant, also fabricated false

15   allegations against Plaintiff.  Plaintiff alleges violations of his Fourteenth Amendment rights.

16          Defendants point out that Fischer, Roman and Ruff have not been served.  Accordingly, claims

17   against them are dismissed without prejudice.  *See* Fed. R. Civ. P. 4(m).

18          The undersigned recommends that the rest of Defendants' motion be denied as to this count.

19   Defendants argue that Plaintiff fails to state a claim because he has the inmate appeals process available

20   to correct perceived errors.  Defendants rely on out-of-the-Circuit cases holding that a due process claim

21   fails when the error complained of was cured in the administrative appeal process.  *See Wycoff v.*

22   *Nichols,* 94 F.3d 1187, 1189 (8th Cir. 1996)[10]; *Morissette v. Peters,* 45 F.3d 1119, 1122. (9th Cir. 1995).

23    Defendants have not, however, shown that the errors Gray complains about were, in fact, cured during

24   the administrative appeal process.  Defendants only assert that "[i]t also appears Plaintiff's complaints

25   may have been addressed, since he later notes the items used against him were investigated and found to

26   be invalid." (Defs.' P. & A. in Sup. of Defs.' Mot. to Dismiss, 11:10-12).  Defendants also seem to

27

28          [10]Defendants cite this case as a Ninth Circuit case.  The case originated in Iowa, which is part of the Eighth Circuit.

1   disregard Plaintiff's allegation that the false information was still used against him after it was

2   determined to be invalid.  (FAC, p. 36).  Next, Defendants argue that "enforcement of rules regarding

3   gangs and drugs are done for valid penological reasons."  (Defs.' P. & A. in Sup. of Defs.' Mot. to

4   Dismiss, 11:12-14).  Although this is a sound general proposition, Defendants as the movants have not

5   carried their burden of showing that such enforcement was done for a valid reason in this particular case.

6   Finally, Defendants claim that Plaintiff failed to attach the false documents to the FAC or explain how

7   the documents caused him any harm.  A plaintiff is not required to support his complaint with

8   documentary evidence.  At the motion to dismiss stage, Plaintiff's allegations themselves must be taken

9   as true.  *See Tanner*, 879 F.2d at 576.  Plaintiff alleges that the false information was related to his gang

10  validation.  Being validated as a gang member may lead to significant restrictions, which is a sufficient

11  showing of harm.

12          **11.     Count Eleven - Claims Against Giurbino, Maldonado and Renteria**

13          Gray alleges that on April 7, 2005, he was denied "all forms of due process" at a classification

14  hearing conducted by Giurbino.  (FAC, p. 39).  Plaintiff does not specify the nature of the hearing or the

15  deprivation.  Gray filed an administrative appeal concerning the action.

16          On June 1, 2005, Ryan was interviewed by Lieutenant Ryan regarding the appeal.  Ryan told

17  Plaintiff her recommendation was going to be to release Plaintiff to general population.  The appeal was

18  not timely returned to Plaintiff.  The appeal was assigned for review to R. Renteria, who never

19  interviewed Plaintiff, but altered documents and "fabricated dates on documents to cover up the

20  violation of Plaintiff's due process right."  (FAC, p. 39).

21          Plaintiff further alleges that he had certain books which he was told to send home as contraband.

22  Plaintiff was warned that otherwise the books could be used in the gang validation process against him

23  in the future.  Plaintiff mailed all the books home.

24          Giurbino and Maldonado, however, later used other books Plaintiff had to validate him as a gang

25  member.  The books were interpreted as expressing the Black Guerilla Family ("B.G.F.") gang ideology.

26  Gray points out that when he arrived at Centinela and was issued his personal property, including the

27  books, on March 11, 2004, the staff did not indicate than any of the books were contraband.  Gray

28  alleges that Defendants failed to warn him that the confiscated books were prohibited.  Plaintiff therefore

1    alleges violations of the First and Fourteenth Amendments.

2         Defendants argue that Plaintiff states no claim because inmates have no constitutional right to a

3    specific appeal process; Plaintiff has not shown that his liberty was impinged as a result of the hearing;

4    and Plaintiff's loss of books does not violate due process because a state post-deprivation remedy is

5    available under the California Tort Claims Act.

6         Plaintiff's claim against Renteria for tampering with the appeal should be dismissed without

7    prejudice, because it does not appear that Renteria has been served.  *See* Fed. R. Civ. P. 4(m).  Further,

8    Plaintiff's due process claim based on the delay in the return of the appeal to Plaintiff fails because there

9    is no due process right to a smoothly functioning appeal system:

10        California has not created a protected interest in an administrative appeal system in prison.
          California Code of Regulations, title 15 sections 1073 and 3084 *et seq.* grant prisoners in the
11        county jails and state prisons a purely procedural right: the right to have a prison appeal. The
          regulations simply require the establishment of a procedural structure for reviewing prisoner
12        complaints and set forth no substantive standards; instead, they provide for flexible appeal time
          limits, *see* Cal.Code Regs. tit. 15, § 3084.6, and, at most, that "no reprisal shall be taken against
13        an inmate or parolee for filing an appeal," *id.* § 3084.1(d). A provision that merely provides
          procedural requirements, even if mandatory, cannot form the basis of a constitutionally
14        cognizable liberty interest. *See Smith v. Noonan,* 992 F.2d 987, 989 (9th Cir.1993); *see also
          Antonelli,* 81 F.3d at 1430 (prison grievance procedure is procedural right that does not give rise
15        to protected liberty interest requiring procedural protections of Due Process Clause). Gonzalez
          had no federal constitutional right to a properly functioning appeal system.

16

17   *Gonzalez,* 2007 WL 2221081 at 3.  He has also not shown any significant hardship from the late

18   response.

19        Plaintiff also has no due process claim for the loss of the books, because he had a state post-

20   deprivation remedy for this loss under the California Tort Claims Act.  It appears, however, that Plaintiff

21   alleges that the confiscation of the books was a violation of his First Amendment right.  Defendants do

22   not move to dismiss any First Amendment claim that may be based on these allegations.  The FAC does

23   not specify whether the First Amendment claim is one for retaliation or for violation of Plaintiff's free

24   speech rights.  Therefore the allegations appear too vague to state a claim.

25        Defendants also move to dismiss Plaintiff's claim related to a classification committee hearing.

26   The allegations in Count Eleven do not seem to mention such a hearing.  At any rate, such a claim is not

27   clearly stated and therefore fails.

28   ///

### 12.   Count Twelve - Claims Against Fischer, Ramon and Ruff

Plaintiff alleges that on February 9, 2006, Fischer, Ramon and Ruff validated Plaintiff as a gang member based on false information.  These individuals knew that the information was false.  (FAC, p. 44).  On March 12, 2006, Plaintiff was going be placed in the SHU for an indeterminate term.  Warden Robert Ayers, however, postponed the placement.  Plaintiff was assigned a staff assistant who was going to verify the information used for Plaintiff's validation.  On April 27, 2006, officer Walton concluded that none of the information was sufficiently reliable to support Gray's validation.  Gray characterizes the staff's use of this information as retaliation for his filing of administrative appeals.

From the allegations, it is not clear whether Plaintiff is still validated as a gang member as a result of the determination made by Fischer, Ramon and Ruff.  Gray alleges violation of the Fourteenth Amendment.  Plaintiff's claim fails as against Fischer, Roman and Ruff, because these individuals have not been served and are not parties to this action.[11]

### 13.   Count Thirteen - Claims Against Woodford and Tilton[12]

Plaintiff alleges that Jeanne Woodford and James Tilton implemented rules that resulted in arbitrary policies regarding what type of reading material is considered contraband.  (FAC, p. 48).  Gray alleges violations of the First and Fourteenth Amendments.

As an initial matter, Tilton has not been served.  Claims against him are subject to dismissal without prejudice.  *See* Fed. R. Civ. P. 4(m).  Defendant argue that Gray has not shown that he has the standing to assert such a general claim, because he has not specified his injury; and that he failed to allege personal participation of Defendant Woodford in the violation.

Plaintiff has sufficiently alleged an injury and standing.  The FAC describes his loss of books which the prison officials characterized as contraband.  Therefore Plaintiff has indicated an injury resulting from a vague policy regarding what reading material can be considered as contraband.

Plaintiff, however, has failed to allege personal participation by Woodford in the alleged

---

[11]The motion to dismiss also argues that a due process claim fails when the error complained of was cured in the administrative appeal process.  *See Wycoff,* 94 F.3d at 1189; *Morissette,* 45 F.3d at 1122.  Defendants have not, however, shown that the errors Gray complains about were, in fact, cured during the administrative appeal process.

[12]As Defendants point out, Plaintiff numbered two last counts of his FAC as Count Twelve. Therefore the very last count will be referred to as Count Thirteen.

1    violation.  A person deprives another "of a constitutional right, within the meaning of section 1983, if he

2    does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is

3    legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy,* 588

4    F.2d 740, 743 (9th Cir. 1978).  The inquiry into causation must be individualized and focused on the

5    duties and responsibilities of each individual defendant whose acts or omissions are alleged to have

6    caused a constitutional deprivation.  *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988) (internal citation

7    omitted).  Woodford is the former director of the California Department of Corrections.  Gray complains

8    of policies implemented at Centinela.  None of the allegations in the FAC indicate that Woodford

9    participated in the policy-making decisions at Centinela, or that her review of the policy was part of her

10   job responsibilities.  Therefore Gray's claim against Woodford fails.

11       The undersigned recommends that Plaintiff be given one final opportunity to amend.  "A district

12   court should grant leave to amend even if no request to amend the pleading was made, unless it

13   determines that the pleading could not possibly be cured by the allegation of other facts."  *See Lopez v.*

14   *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*).  A pro se litigant must be given notice of the

15   deficiencies in his complaint.  *See id.* at 1135.  It appears that at least some of Plaintiff's claims could be

16   cured by amendment.  This Court is mindful of the fact that the operative pleading is the Fourth

17   Amendment Complaint.  Plaintiff's Third Amended Complaint, however, was dismissed as a mass of

18   disorganized miscellaneous allegations, which made it impossible to inform Plaintiff of the pleading

19   deficiencies.  Therefore one last opportunity to amend is appropriate.

20       Considering that the next amended pleading will be Plaintiff's fifth, Plaintiff should be warned

21   that this will be his final opportunity to allege his claims.  Plaintiff has been sufficiently educated on the

22   requirements for stating his case.

23       **B.    Motion to Dismiss Claims for Injunctive Relief**

24       Defendants' motion to dismiss the claims for injunctive relief must be granted because the

25   corresponding claims are not properly stated.  Plaintiff appears to seek the following injunctive relief: an

26   order placing Plaintiff back into general population; an order removing the "false slanderous and

27   injurious hearsay information" from Plaintiff's prison files; an order prohibiting Defendants from

28   subjecting Plaintiff to future "witch hunts" and investigations based on hearsay information; and an

1   order directing implementation of safeguards to make sure that due process is observed.  This relief

2   appears to be related to Plaintiff's due process claims based on his validation as a gang member and his

3   placement in the SHU.  Because the claims are not sufficiently alleged, at this point no relief, including

4   an injunction, appears available.[13]

5   **C.   Motion to Dismiss for Failure to Exhaust Administrative Remedies**

6          Defendants have not demonstrated that Plaintiff failed to exhaust his administrative remedies.

7   Under the Prison Litigation Reform Act ("the PLRA"), "[n]o action shall be brought ... by a prisoner

8   confined in any jail, prison, or other correctional facility until such administrative remedies as are

9   available are exhausted." 42 U.S.C. § 1997e(a); *see also Panaro v. City of North Las Vegas*, 432 F.3d

10  949, 953 (9th Cir. 2005).  "There is no question that exhaustion is mandatory under the PLRA and that

11  unexhausted claims cannot be brought in court."  *Jones v. Bock*, 127 S.Ct. 910, 919 (2007) (citation

12  omitted).

13         "[F]ailure to exhaust is an affirmative defense under the PLRA, and [] inmates are not required to

14  specially plead or demonstrate exhaustion in their complaints."  *Id.* at 921.  The burden of raising and

15  proving the absence of exhaustion is on the defendants.  *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th

16  Cir. 2003).

17         The administrative appeal system for inmates in the California prison system is set forth in Title

18  15 of the California Code of Regulations.  "Any inmate or parolee under the [California Department of

19  Correction's] jurisdiction may appeal any departmental decision, action, condition or policy perceived by

20  those individuals as adversely affecting their welfare."  15 CA ADC § 3084.1(a).  In order to exhaust

21  administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1)

22

23         [13]Defendants also argue that the FAC alleges no ongoing or future violations of Plaintiff's rights
    and that his request for injunctive relief is vague.  Injunctive relief "is unavailable absent a showing of
24  irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate
    threat that the plaintiff will be wronged again - a 'likelihood of substantial and immediate irreparable
25  injury.'"  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (citation omitted).  Injunctive restraints
    "must be narrowly tailored to prevent repetition of proved constitutional violations, and must not intrude
26  unnecessarily on state functions."  *Toussaint v. McCarthy*, 801 F.2d 1080, 1087 (9th Cir. 1986).  The
    FAC, however, at least attempts to allege claims that could, if proved, warrant injunctive relief.  For
27  instance, if Plaintiff can prove that there he has been improperly validated as a gang member and placed
    in the SHU, he can show an injury and may be entitled to an order directing Defendants to reconsider the
28  validation and return Plaintiff to general population.  The availability of injunctive relief appears to
    depend on the proof which may be offered later in the case.

informal resolution, (2) formal written appeal; (3) second level appeal to the institution head or designee, (4) third level appeal to the director of the California Department of Corrections.  15 CA ADC § 3084.5; *see also Barry v. Ratelle*, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997).

Defendants argue that Plaintiff has failed to properly allege exhaustion and to support his allegations with appropriate documentary evidence.  The burden of proving exhaustion, however, is not on Plaintiff, but on Defendants.  Defendants do not offer any evidence demonstrating that Gray failed to exhaust the available remedies regarding his claims.  Therefore the undersigned recommends that the motion be denied as to this ground.

### D.    Motion for a More Definite Statement

The undersigned recommends that the motion for a more definite statement be granted as to the claims that have not been properly stated.  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The complaint must set forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery.  *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996).  The FAC is organized better than the previous pleading.  At the very least, Defendants were able to file a motion to dismiss and address the individual claims.  Throughout their motion papers, however, Defendants noted that it was not always clear which constitutional amendment was alleged to be violated.  This Court agrees.

The First and Fourteenth Amendment give rise to a plethora of constitutional rights.  The Supreme Court precedent "instructs federal courts liberally to construe the 'inartful pleading' of pro se litigants."  *See Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (*per curiam*); *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  This rule is particularly important in civil rights cases.  *Id.*  In the case, the pleading is 52 pages.  It is comprised of thirteen counts.  Every count is supported by several pages of factual allegations.  Plaintiff's identification of what constitutional rights were violated consists mostly of the words "First Amendment right; Fourteenth Amendment right" at the very beginning of every count.  This identification is too general and inadequate.  To ensure that Plaintiff's constitutional rights are carefully protected, the undersigned recommends that Plaintiff be given leave to amend and required to identify, with as much clarity and specificity as possible, what constitutional right was allegedly violated and what facts support the alleged violation.

05cv1475

## V.  CONCLUSION AND RECOMMENDATION

Having reviewed the matter, the undersigned Magistrate Judge recommends that:

1.      Defendants' Motion to dismiss the Fourth Amended Complaint be **GRANTED IN PART** and **DENIED IN PART,** and that Plaintiff be given **_thirty days_** from the date the final order regarding Defendants' Motion is entered to file and serve a Fifth Amended Complaint.  Leave to amend should only be granted as to the previously brought claims for the purpose of curing pleading deficiencies.  No new claims should be alleged.  Plaintiff should be warned that the Fifth Amended Complaint will be his final pleading.

2.      Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies be **DENIED.**

3.      Defendants' Motion for a More Definite Statement be **GRANTED IN PART** and **DENIED IN PART.**

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636 (b)(1).

**IT IS ORDERED** that no later than **_September 7, 2007_**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties within **10 days** of being served with the objections.

**IT IS SO ORDERED.**

DATED:  August 16, 2007

_____

**CATHY ANN BENCIVENGO**
United States Magistrate Judge

05cv1475