1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

RICKY GRAY,

                              Plaintiff,

        v.

JEANNE WOODFORD, et al.,

                              Defendants.

Civil No.        05CV1475 J (CAB)

**ORDER:**


**(1) ADOPTING THE MAGISTRATE JUDGE'S R&R IN PART; AND**

**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

        Plaintiff Ricky Gray ("Plaintiff"), a state prisoner proceeding in pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983 against Defendants, who are employees of the California Department of Corrections and Rehabilitation and Centinela State Prison ("Centinela").  [Doc. No. 1.]  Presently before the Court is Magistrate Judge Cathy Ann Bencivengo's Report and Recommendation ("R&R") recommending that this Court grant in part and deny in part Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint. [Doc. No. 114.]  Plaintiff filed objections to the R&R.  [Doc. No. 116.]  For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss.

//

//

### *Background*

On July 21, 2005, Plaintiff's case was transferred to this District from the United States District Court for the Central District of California.  [Doc. No. 1.]  The last operative pleading in Plaintiff's case was the Third Amended Complaint ("TAC").  After the transfer, Defendants filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and a motion for a more definite statement.  [Doc. No. 10.]  Magistrate Judge Leo. S. Papas issued an R&R finding that the TAC did not contain a short and plain statement of Plaintiff's claims, recommending that the TAC be dismissed, and recommending that Plaintiff be given leave to amend his TAC.  [Doc. No. 28.]  On April 25, 2006, this Court adopted Magistrate Judge Papas' R&R, granted Defendants' motions, and granted Plaintiff leave to file a Fourth Amended Complaint ("FAC").  [Doc. No. 42.]

On August 29, 2006, Plaintiff filed his FAC.  [Doc. No. 59.]  The FAC alleges numerous claims for First Amendment and Fourteenth Amendment violations, including improper handling of Plaintiff's appeals; seizure of his personal propery; lack of impartiality in the gang validation process; and improper assignment of Plaintiff to administrative segregation and the Security Housing Unit ("SHU").  Plaintiff divided his claims into thirteen counts.  On October 24, 2006, Defendants filed a motion to dismiss or, in the alternative, motion for a more definite statement.  [Doc. No. 75.]

### *Legal Standard*

The duties of a district court in connection with a magistrate judge's report and recommendation are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1).  The district court must "make a de novo *determination* of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]."  *See United States v. Raddatz*, 447 U.S. 667, 676 (1980) (citing § 636(b)(1)); *see also United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).

Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  *See* Fed. R. Civ. P. 12(b)(6); *see also Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

A motion to dismiss should be granted if the plaintiff is unable to delineate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)).   A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable theory. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing the motion, the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 895  (9th Cir. 2002).  However, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Instead, the court must determine "whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citations omitted).  When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, and documents relied upon but not attached to the complaint when authenticity is not contested. *See Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997).

In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally, affording the plaintiff the benefit of any doubt. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The *pro se* plaintiff must be given leave to amend deficiencies unless it is clear that they cannot be overcome by amendment. *See Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987).  However, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  The plaintiff must identify with "at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *See Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1982) (internal quotation omitted).

*Discussion*

As a preliminary matter, the Court notes that the FAC omits several of the Defendants named in the TAC.  "The fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990).  An amended complaint therefore must be complete in itself without reference to the original complaint.  *See* Local R. 15.1.  All claims not re-alleged in the amended complaint are deemed to have been waived.  *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).  In the FAC, Plaintiff does not re-allege his claims against Defendants Cook, Dexter, Eason, Gonzalez, Guillen, Hudson, Masters, Parks, Rodriguez, Salazar, J. Stokes, M. Stokes, and Trevino.  Accordingly, the Court **DISMISSES** these Defendants from Plaintiff's action.

In addition, although the FAC names Fischer, Renteria, Roman, Ruff, and Tilton as Defendants, there is no indication that these individuals were served.  The Federal Rules of Civil Procedure provide that "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court . . . shall dismiss the action without prejudice as to that defendant." Fed. R. Civ. P. 4(m).  The FAC was filed on August 29, 2006, and the service period lapsed on December 29, 2006.  Plaintiff has requested no extensions of the service period, nor has he demonstrated good cause for an extension.  Accordingly, the Court **DISMISSES** Defendants Fischer, Renteria, Roman, Ruff, and Tilton from Plaintiff's action.

As noted above, Plaintiff's FAC consists of thirteen counts, each asserted against a particular Defendant or Defendants.  At the beginning of each count, Plaintiff states that Defendants violated his First or Fourteenth Amendment rights, or both.  In many instances, Plaintiff fails to specify which of his First or Fourteenth Amendment rights he seeks to enforce.  The Court addresses each of the thirteen counts in turn.  The factual allegations recounted below are set forth in Plaintiff's FAC.

**I.    Count One: Claims Against Defendant Zaragoza**

Plaintiff alleges that upon his arrival at Centinela, prison employees withheld some of his personal property.  (FAC ¶ 1.)  Plaintiff asked correctional sergeant Zaragoza about the property, and Zaragoza "became highly agitated, using disrespectful and abusive language." (*Id.*)  Plaintiff told Zaragoza that his conduct violated California regulations.  (*Id.*)  Zaragoza then informed Plaintiff that he was in violation of prison grooming standards because he had not shaved.  (*Id.* ¶ 2.)  Plaintiff stated that he had a medical condition and was exempt from the standards.  (*Id.*)  To punish Plaintiff, Zaragoza had Plaintiff removed from the common holding cell, placed Plaintiff in an isolated holding cell, and refused to issue Plaintiff lunch. (*Id.*)  Half an hour later, Sergeant Rodriguez moved Plaintiff back to the common holding cell. (*Id.* ¶ 3.)

Approximately a week later, Plaintiff returned to the administrative office to retrieve his personal property.  (*Id.* ¶ 4.)  He handed correctional officer G. Gonzales an inmate appeal regarding Zaragoza's alleged misconduct.  (*Id.*)  Gonzales referred the appeal to Zaragoza, and he reviewed it.  (*Id.* ¶¶ 4, 9.)  Zaragoza subsequently confiscated Plaintiff's "medically prescribed authorized boots" and destroyed them.  (*Id.* ¶ 5.)  Zaragoza also ordered Plaintiff to send home approximately $700 worth of personal property.  (*Id.* ¶ 6.)  Plaintiff asserts that possession of this property was authorized by the "Centinela operation procedure manual." (*Id.*)  Plaintiff's appeal regarding Zaragoza's actions was later denied.  (*Id.* ¶ 9.)

Plaintiff alleges that Zaragoza acted out of retaliatory motives and violated his rights to due process.  Specifically, Plaintiff asserts that Zaragoza violated 15 CA ADC § 3084.5(e), which prohibits the review of an administrative appeal by a person who participated in the incident being appealed.  (*Id.*)  Defendants move to dismiss Plaintiff's due process claims. Defendants do not move to dismiss the claims Plaintiff asserts under the First Amendment.

**A. Plaintiff's Due Process Allegations Regarding Deprivation of Property**

The Court agrees with the R&R and finds that Plaintiff cannot state a claim under the Fourteenth Amendment for intentional deprivation of property.  (*See* R&R at 4.)  The Supreme Court has held that "an intentional deprivation of property does not give rise to a violation of

the Due Process Clause if the state provides an adequate post-deprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 533 n.14.  The Ninth Circuit has held that "California Law provides an adequate post-deprivation remedy for any property deprivations." *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).  To the extent Plaintiff alleges that Defendants' taking of Plaintiff's personal effects was an unlawful deprivation of property without due process of law, these allegations fail to state a claim because Plaintiff has available to him an adequate post-deprivation remedy.

**B. Plaintiff's Due Process Allegations Regarding His Transfer to Administrative Segregation**

The Court next examines Plaintiff's allegation that he was denied due process by being transferred to administrative segregation.  The Court agrees with the R&R and finds that Plaintiff has not alleged a protected liberty interest in being free from administrative segregation.  (*See* R&R at 6.)

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).  State statutes and prison regulations may grant prisoners liberty interests sufficient to invoke due process protections. *Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). However, the Supreme Court has significantly limited the instances in which due process can be invoked.  Pursuant to *Sandin v. Conner*, a prisoner can show a liberty interest under the Due Process Clause of the Fourteenth Amendment only if he alleges facts to show that the defendant (1) restrained his freedom in a manner not expected from his sentence; and (2) imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."  515 U.S. 472, 484 (1995).

Plaintiff failed to identify a state statute or prison regulation affording him a protected liberty interest in being free from administrative segregation.  Further, Plaintiff has not identified an "atypical and significant hardship" resulting from his confinement in administrative segregation. *See Sandin*, 515 U.S. at 484.  Plaintiff does not indicate whether the confinement was prolonged or highly restrictive, nor does he allege that it resulted in a

major disruption in his environment.  Accordingly, Plaintiff's allegations regarding his transfer to administrative segregation fail to state a claim under the Due Process Clause.

**C. Plaintiff's Due Process Allegations Regarding the Review and Denial of His Appeal**

The Court next examines Plaintiff's claim that his due process rights were violated when Zaragoza reviewed his appeal.  The Court declines to adopt the portion of the R&R addressing this claim and finds that Plaintiff has failed to state a due process claim regarding the review and denial of his appeal.

The due process clause of the Fourteenth Amendment creates "no legitimate claim of entitlement to a [prison] grievance procedure."  *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  Even the failure of officials to properly implement an administrative appeals process within the prison system does not raise constitutional concerns. *See id.*; *see also Ramirez v. Galaza*, 348 F.3d 850, 860 (9th Cir. 2003); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *Flick v. Alba*, 932 F.2d 728 (8th Cir. 1991); *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill.1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment.").

Plaintiff has failed to plead facts demonstrating that Defendants deprived him of a protected liberty interest by allegedly conducting an improper review of his grievances.  The R&R finds that Plaintiff has alleged an atypical and significant hardship resulting from the improper review of his grievance.  (*See* R&R at 6.)  However, Plaintiff pleads no facts to suggest how the allegedly improper review and consideration of his grievance amounted to a restraint on his freedom not contemplated by his original sentence.  Plaintiff does not allege that the improper handling of his grievance affected the conditions of his confinement or the duration of his sentence.  Accordingly, Plaintiff's allegations regarding the handling of his grievance fail to state a claim under the Due Process Clause.

**D. Plaintiff's First Amendment Retaliation Claim**

The Court next examines Plaintiff's allegation that Zaragoza retaliated against him for exercising his First Amendment rights.  The Court agrees with the R&R and finds that Plaintiff has stated a claim for First Amendment retaliation.  (*See* R&R at 7.)

A claim of First Amendment retaliation within the prison context contains the following five elements: (1) a state actor took an adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  An allegation of "harm that is more than minimal" from the alleged retaliation can satisfy the fourth element without an allegation of a chilling effect.  *See id.* at 567, 568 n.11.

Plaintiff alleges that Zaragoza took an adverse action against him, namely, confiscating and destroying his property. (FAC ¶¶ 5, 6.) Plaintiff also alleges that Zaragoza's actions were retaliatory in nature and motivated by Plaintiff's submission of the administrative appeal. (*Id.* ¶ 8.)  Plaintiff alleges that he was deprived of medically authorized footwear and $700 in personal property, a harm that is more than minimal. (*Id.* ¶¶ 5, 6.)  Plaintiff alleges that he was allowed to have this property under Centinela's procedures and regulations, suggesting that Zaragoza's actions did not advance a legitimate correctional goal. (*Id.*)  On a motion to dismiss, these allegations are sufficient to state a claim that Plaintiff was retaliated against for filing an administrative appeal.

In sum, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's due process claims against Zaragoza, and the Court **DENIES** Defendants' Motion to Dismiss as to Plaintiff's First Amendment claims against Zaragoza.

**II.     Count Two: Claims Against Defendant Sidhu**

Plaintiff asserts that correctional officer D. Sidhu violated his First and Fourteenth Amendment rights.  In support of these claims, Plaintiff alleges that in March 2004, Sidhu informed Plaintiff that another correctional officer did not want Plaintiff in her housing unit because Plaintiff was a jailhouse lawyer and had filed complaints as to prison conditions at

Centinela.  (FAC ¶ 11.)  Sidhu told Plaintiff to pack his belongings because he would be moving to another housing unit.  (*Id.*)  Plaintiff handed Sidhu an administrative appeal challenging this conduct.  (*Id.*)  Plaintiff alleges that Sidhu then fabricated a memo stating that Plaintiff should be placed in administrative segregation.  (*Id.* ¶ 12.)  Plaintiff was placed in administrative segregation and was interviewed three days later by correctional captain Dexter. (*Id.*) Dexter found no legitimate justification for placing Plaintiff in administrative segregation and ordered Plaintiff's release from administrative segregation.  (*Id.*)  Plaintiff alleges that Sidhu's actions were retaliatory in nature and motivated by Plaintiff's submission of the administrative appeal.  (*Id.*)

### A. Due Process Claim

The Court agrees with the R&R and finds that Plaintiff has failed to state a due process claim against Sidhu.  (*See* R&R at 7.)  As stated above, a prisoner alleging a due process violation based on placement in administrative segregation must plead facts demonstrating an atypical and significant hardship. *See Sandin*, 515 U.S. at 483-86.  Plaintiff simply states that he was placed in administrative segregation, but he does not describe any accompanying hardships.  The Court therefore **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's due process claim against Sidhu.

### B. First Amendment Claim

The Court also agrees with the R&R's finding that Plaintiff has stated a First Amendment retaliation claim against Sidhu.  (*See* R&R at 8.)  Plaintiff alleges that Sidhu took an adverse action against him by fabricating a memo that led to his placement in administrative segregation.  (FAC ¶ 12.)  Plaintiff alleges that Sidhu took this action because Plaintiff submitted an administrative appeal challenging Sidhu's conduct.  (*Id.*)  Plaintiff asserts that there was no justification for placing him in administrative segregation.  (*Id.*)  On a motion to dismiss, these allegations are sufficient to state a claim that Plaintiff was retaliated against for filing an administrative appeal.  The Court therefore **DENIES** Defendants' Motion to Dismiss as to Plaintiff's First Amendment retaliation claim against Sidhu.

### III.   Count III: Claims Against Giurbino

Plaintiff alleges First and Fourteenth Amendment claims against Defendant G. Giurbino, warden of Centinela.  Plaintiff alleges that Giurbino: (1) appointed African-American members of the Men's Advisory Council instead of allowing them to be elected by African-American prisoners; (2) during lockdowns, allowed Hispanic prisoners to receive packages and canteen items, but denied the same privileges to African-American prisoners; (3) ignored appeals submitted by African-American prisoners; (4) assigned properly working telephones to Hispanic prisoners, but assigned inoperative telephones to African-American prisoners; (5) segregated shower use by race; and (6) denied appeals submitted by African-American inmates while showing favoritism toward Hispanic prisoners.  (FAC ¶¶ 13-19.)

### A. Standing

Defendants argue that Plaintiff fails to allege that he was impacted by Giurbino's alleged favoritism and therefore lacks standing.  (Mot. to Dismiss at 5.)  To establish standing, Plaintiff must allege facts demonstrating that he "suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical."  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).  Plaintiff asserts that Giurbino's racially discriminatory practices denied African-American prisoners, "including Plaintiff," equal protection of the law. (FAC ¶ 13.)  Specifically, Plaintiff alleges that no canteen items or packages were delivered to him or other African-American prisoners during lockdown, but such items were delivered to Hispanic prisoners.  (*Id.* ¶ 15.)  Plaintiff also alleges that Giurbino ignored administrative appeals filed by Plaintiff and other African-American prisoners.  (*Id.* ¶ 16.)  Contrary to Defendants' assertions, Plaintiff has alleged actual and concrete injuries resulting from Giurbino's alleged discriminatory policies.  Accordingly, Plaintiff has established standing as to his claims against Giurbino.

### B. Plaintiff's First Amendment Claim

The Court agrees with the R&R and finds that Plaintiff has failed to state a First Amendment claim against Giurbino.  (*See* R&R at 8.)  Although Plaintiff lists several adverse

actions that Giurbino allegedly took against him and other African-American prisoners, Plaintiff does not allege that Giurbino took these actions in retaliation for Plaintiff's participation in a protected First Amendment activity.  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's First Amendment claim against Giurbino.

### C. Plaintiff's Due Process Claim

The Court agrees with the R&R and finds that Plaintiff has failed to state a Due Process claim against Giurbino for the alleged denial of African-American prisoners' right to vote on representatives to the Men's Advisory Council.  (*See id.* at 5.)  Plaintiff's claim regarding voting rights appears to be a due process claim, rather than an equal protection claim, because Plaintiff does not allege that other racial groups were permitted to vote on representatives to the council.  In addition, Plaintiff alleges that the right to vote on representatives to the council is a "state-created liberty right," further suggesting that Plaintiff is attempting to assert a due process claim.

As noted above, state statutes and prison regulations may grant prisoners liberty interests sufficient to invoke due process protections.  *See Meachum*, 427 U.S. at 223-27. However, a prisoner can demonstrate a liberty interest only if he alleges facts showing that the defendant "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."  *See Sandin*, 515 U.S. at 484.  Plaintiff has not alleged any significant hardship from being unable to elect council members.  In the absence of a protected liberty interest or a significant hardship, Plaintiff's due process claim fails.  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's due process claim against Giurbino.

### D. Plaintiff's Equal Protection Claim

The Court agrees with the R&R and finds that Plaintiff has stated an equal protection claim against Giurbino.  The equal protection clause commands that no state shall " 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 must plead

intentional discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. *See Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Plaintiff alleges that similarly situated African-American and Hispanic inmates were treated differently in the following ways: (1) during lockdown, Hispanic inmates were permitted to receive packages and canteen items, while African-American inmates were not; (2) administrative appeals submitted by African-American inmates were ignored while Giurbino demonstrated favoritism toward Hispanic prisoners; (3) Hispanic inmates had designated showers which African-American inmates were prohibited from using; and (4) Hispanic inmates were assigned to telephones which were always in operating condition, while African-American inmates were assigned to telephones which were chronically inoperative. (FAC ¶¶ 15-18.)   Plaintiff asserts that Giurbino "is practicing racial favoritism towards Hispanic prisoners, while subjecting black prisoners to disparate and racially discriminatory and unequal treatment based solely upon their racial or ethnic ancestry." (*Id.* ¶ 16.) Plaintiff's allegations that similarly situated prisoners were treated differently because of their race and that Giurbino intended to discriminate on the basis of race are sufficient to state an equal protection claim.   Accordingly, the Court **DENIES** Defendants' Motion to Dismiss as to Plaintiff's equal protection claim against Giurbino.

In sum, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's First Amendment and due process claims against Giurbino.   The Court **DENIES** Defendants' Motion to Dismiss as to Plaintiff's equal protection claim against Giurbino.

## IV.    Counts 4 and 5: Claims Against Defendant Maldonado

Counts 4 and 5 of the Complaint allege essentially the same facts and the same violations of law against Defendant Maldonado.   Accordingly, the Court considers the two counts together.   Plaintiff alleges First and Fourteenth Amendment claims against Defendant Maldonado, an "institutional gang coordinator." (FAC ¶ 20.) Plaintiff alleges that Maldonado ordered correctional officer J.S. Hill to search the cells of African-American Muslim prisoners and confiscate all books and written material for review.   (*Id.*)   According to Plaintiff,

Maldonado has "an intense personal bias and animosity towards black prisoners in general and black Muslims in particular." (*Id.*)  On August 10, 2004, Plaintiff's cell was searched at Maldonado's direction, and all of Plaintiff's "black oriented printed material[s]" were confiscated and given to Maldonado for review.  (*Id.* ¶ 21.)  Plaintiff submitted an administrative appeal challenging the confiscation of the materials, and he wrote to the CDC Director's Office to complain of the confiscation.  (*Id.* ¶ 22.)  Plaintiff asserts that the Director's Office ordered Maldonado to explain why the materials were contraband, or return the materials to Plaintiff.  (*Id.* ¶ 23.) According to Plaintiff, Maldonado ignored the order and has refused to return Plaintiff's materials.  (*Id.*)

Plaintiff alleges that on March 30, 2005, Maldonado stated that he was transferring Plaintiff to administrative segregation because Plaintiff had filed administrative appeals challenging Maldonado's actions.  (*Id.* ¶ 24.)  Maldonado stated that Plaintiff would be placed in administrative segregation pending an investigation into Plaintiff's possible involvement in gang activities.  (*Id.*)  Plaintiff states that he was never involved in gang activities while at Centinela.  (*Id.* ¶ 25.) According to Plaintiff, Maldonado's investigation appeared to be based upon a document that originated outside Centinela and was more than six months old.  (*Id.*) Plaintiff asserts that his placement in administrative segregation violated procedural rights provided by state regulations, such as the right to an interview with a staff member.  (*Id.* ¶ 26.)

**A. Plaintiff's First Amendment Claim**

The Court agrees with the R&R's finding that Plaintiff has stated a First Amendment retaliation claim against Maldonado. (*See* R&R at 10.)  Plaintiff alleges that Maldonado took an adverse action against him by placing him in administrative segregation.  (FAC ¶ 24.) Plaintiff alleges that Maldonado took this action because Plaintiff submitted an administrative appeal challenging Maldonado's conduct.  (*Id.*)  Plaintiff appears to allege that there was no legitimate correctional purpose for placing him in administrative segregation because he was not involved in gang activities while at Centinela, and the documentation of Petitioner's alleged gang involvement was outdated.  (*Id.* ¶ 25.)  On a motion to dismiss, these allegations are sufficient to state a claim that Plaintiff was retaliated against for filing an administrative

appeal.  The Court therefore **DENIES** Defendants' Motion to Dismiss as to Plaintiff's First Amendment retaliation claim against Maldonado.

### B. Plaintiff's Equal Protection Claim

The Court agrees with the R&R's finding that Plaintiff has stated an equal protection claim against Maldonado.  (R&R at 11.)  Plaintiff alleges that Maldonado treated African-American Muslim prisoners differently from other prisoners by ordering the search of their cells and the confiscation of any written material.  (FAC ¶ 20.)  Plaintiff infers that Maldonado ordered the search and seizure because he has "an intense personal bias and animosity towards black prisoners in general and black Muslims in particular."  (*Id.*)  Plaintiff's allegations that African-American Muslim prisoners were treated differently because of their race and religion and that Maldonado intended to discriminate on the basis of race and religion are sufficient to state an equal protection claim.  Accordingly, the Court **DENIES** Defendants' Motion to Dismiss as to Plaintiff's equal protection claim against Maldonado.

### C. Plaintiff's Due Process Claim Regarding Administrative Segregation

The Court agrees with the R&R's finding that Plaintiff has failed to state a due process claim against Maldonado regarding his transfer to administrative segregation.  (*See* R&R at 11.)  As stated above, a prisoner alleging a due process violation based on placement in administrative segregation must plead facts demonstrating an atypical and significant hardship. *See Sandin*, 515 U.S. at 483-86.  Plaintiff has included no facts about the conditions in administrative segregation.  Plaintiff does not allege that the conditions in administrative segregation differed substantially from the conditions in Centinela's general population, nor does he allege that a significant degree of restraint was imposed upon him.  The Court therefore **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's due process claim against Maldonado.

### D. Plaintiff's Due Process Claim Regarding Confiscation of His Written Materials

The Court agrees with the R&R's finding that Plaintiff has failed to state a due process claim against Maldonado regarding the confiscation of his written materials.  (*See* R&R at 11.) As stated above, "an intentional deprivation of property does not give rise to a violation of the

Due Process Clause if the state provides an adequate post-deprivation remedy." *Hudson*, 468 U.S. at 533 n.14.  California law provides Plaintiff an adequate post-deprivation remedy for the confiscation of his written materials.  Further, Plaintiff does not describe any hardships resulting from the confiscation.  The Court therefore **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's due process claim against Maldonado.

**V.     Count 6: Claims Against Defendants Sidhu, Vargus, Maldonado, and Giurbino**

In count six, Plaintiff again alleges violations of the First and Fourteenth Amendments. Plaintiff alleges that the actions of Defendants Sidhu, Vargus[1], Maldonado, and Giurbino have jeopardized his chances of being paroled.  (FAC p.30.)  Specifically, Plaintiff argues that his post-conviction conduct record is considered during parole determinations, and that false information in his file and pretextual transfers to administrative segregation will negatively impact his parole determination.  (*Id.*)  Plaintiff also asserts that his indefinite placement in the Security Housing Unit ("SHU") violates his right to due process because, to his knowledge, no prisoner has ever been paroled while serving an indefinite term in the SHU.  (*Id.*)

**A. First Amendment Claim**

The Court finds that Plaintiff has failed to state a First Amendment claim against Sidhu, Vargus, Maldonado, and Giurbino.  (*See* R&R at 8.)  Plaintiff does not allege that these Defendants took adverse action against him in retaliation for his participation in a protected First Amendment activity.  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's First Amendment claim against Sidhu, Vargus, Maldonado, and Giurbino .

**B. Due Process Claim**

The Court declines to adopt the portion of the R&R addressing Plaintiff's due process claim against Sidhu, Vargus, Maldonado, and Giurbino and finds that Plaintiff has stated a due process claim against these Defendants.

As previously stated, a prisoner alleging a due process violation must plead facts demonstrating an atypical and significant hardship.  *See Sandin*, 515 U.S. at 483-86.  In *Wilkinson v. Austin*, 545 U.S. 209, 223-25 (2005), the Supreme Court held that indefinite

---

[1] Vargus is a correctional lieutenant. (*See* FAC p. 4.)

placement of prisoners in a "supermax" facility, where they are not eligible for parole consideration, imposes an "atypical and significant hardship within the correctional context." Because indefinite placement in California's SHU generally renders inmates ineligible for parole consideration, it appears that California prisoners also have a liberty interest in not being placed indefinitely in the SHU. *Accord id.* at 224-25.

Plaintiff alleges that he is being held indefinitely in the SHU, and that he was not afforded procedural protections provided under California regulations before being placed in the SHU. Plaintiff alleges that he is being deprived of a liberty interest because he cannot be paroled while being held in the SHU. Ineligibility for parole consideration is an atypical and significant hardship. *See id.* Liberally construed, Plaintiff has alleged a cognizable due process claim for Defendants' actions in not complying with the procedural protections due based upon Plaintiff's placement and detention in the SHU. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss as to Plaintiff's due process claim against Sidhu, Vargus, Maldonado, and Giurbino.

## VI.   Count Seven: Claims Against Gibson

Plaintiff asserts that Defendant R. Gibson violated his First Amendment rights by retaliating against him for filing an administrative appeal and by denying him access to the courts. Plaintiff alleges that on March 22, 2005, Gibson, a correctional sergeant, escorted Plaintiff to the Receiving and Release Office to pick up Plaintiff's legal materials. (FAC ¶ 47.) Plaintiff had previously submitted an administrative appeal to Gibson regarding a property issue. (*Id.*) When Plaintiff inquired about the status of the appeal, Gibson became "irate," verbally abused Plaintiff, and denied him access to his legal materials. (*Id.*) Plaintiff needed the materials for a small claims court action. (*Id.*) Plaintiff alleges that because he could not retrieve his legal materials, he lost the action, and "his right to access to the court was abridged." (*Id.* ¶ 49.) Plaintiff also alleges that Gibson prepared a "false serious disciplinary rule violations report" charging Plaintiff with disruptive behavior. (*Id.* ¶ 47.) Plaintiff alleges that Gibson prepared the report because he was retaliating against Plaintiff for filing an

administrative appeal.  (*Id.*)  Plaintiff later was found not guilty of the disciplinary charges filed by Gibson.  (*Id.* ¶ 48.)

### A. Plaintiff's Retaliation Claim

The Court agrees with the R&R and finds that Plaintiff has failed to state a First Amendment retaliation claim against Gibson.  (*See* R&R at 14.)  As noted above, a claim of First Amendment requires a plaintiff to plead that: (1) a state actor took an adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.  *See Rhodes*, 408 F.3d at 567-68.  An allegation of "harm that is more than minimal" from the alleged retaliation can satisfy the fourth element without an allegation of a chilling effect.  *See id.* at 567, 568 n.11.

Plaintiff fails to allege that the exercise of his First Amendment rights was chilled, or that he suffered more than minimal harm as a result of Gibson's alleged filing of a false disciplinary report.  Plaintiff was found not guilty of the fabricated charge.  He does not allege that he was disciplined or suffered any other form of harm as a result of the fabricated charge. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's First Amendment retaliation claim against Gibson.

### B. Plaintiff's Access-to-Court Claim

The Court agrees with the R&R and finds that Plaintiff has failed to state a claim alleging that Gibson violated his First Amendment right of access to the courts.  (*See* R&R at 14.)  As explained in the R&R, the right of access is only guaranteed for certain types of claims, such as direct and collateral attacks upon a conviction or sentence, and civil rights actions challenging conditions of confinement.  *See Lewis v. Casey*, 518 U.S. 343, 354 (1996). Plaintiff's underlying action was a small claims case and did not challenge his conviction or conditions of confinement.  Accordingly, the First Amendment right of access to the courts does not apply in this instance.  The Court therefore finds that Plaintiff has failed to state a claim against Gibson for denial of access to the courts and **GRANTS** Defendants' Motion to Dismiss as to this claim.

**VII.   Count 8: Claims Against Defendant Gardner**

Plaintiff alleges that Defendant F. Gardner violated his rights to due process under the Fourteenth Amendment.   Specifically, Plaintiff asserts that Gardner placed "false and slanderous information" in Plaintiff's file.  (FAC ¶ 50.)  Plaintiff alleges that this information was used to impose "adverse administrative quasi-punitive sanctions and conditions upon Plaintiff."  (*Id.*)  Plaintiff alleges that his current confinement in administrative segregation is the direct result of the false information placed in his file.  (*Id.*)  Plaintiff alleges that the "furnishing and use of the information deprives Plaintiff of the fundamental fairness and due process of the laws guaranteed by the 14th Amendment."  (*Id.*)

To state a due process claim challenging the accuracy of prison records, a plaintiff must allege that the state has created a liberty interest in accurate prison record information.  *See Hernandez v. Johnston*, 833 F.2d 1316, 1318-19 (9th Cir. 1987).  Plaintiff does not allege that the state of California has created a liberty interest in accurate prison records.  Further, Plaintiff does not allege whether he has fulfilled any procedural requirements for challenging the accuracy of his prison record.   In addition, Plaintiff fails to explain the nature of the information in the file or why it is false.  The Court therefore **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's Due Process claim against Gardner.

**VIII.   Count 9: Plaintiff's Claims Against Defendants Daugherty, Degeus, Loera and Grannis**

Plaintiff alleges that Defendants W. Daugherty, D.J. Degeus, M.G. Loera, and N. Grannis violated his due process rights.  Degeus is an appeals coordinator. (FAC, p.3.)  Loera and Daughtery are assistant appeals coordinators.  (*Id.* pp.2, 4.)  Grannis is chief of inmate appeals. (*Id.* p.3.)  Plaintiff alleges that these Defendants refused to process and/or rejected Plaintiff's appeals for pretextual reasons.  (*Id.* ¶ 51.)

The Court declines to adopt the portion of the R&R addressing Count 9 and finds that Plaintiff has failed to state a due process claim regarding the review and denial of his appeal. As noted above, the Due Process Clause creates no claim of entitlement to a prison grievance procedure.  *See Mann*, 855 F.2d at 640.  The failure of prison officials to properly implement

an administrative appeals process does not raise constitutional concerns. *See id.* Plaintiff has failed to plead facts demonstrating that Defendants deprived him of a protected liberty interest by allegedly conducting an improper review of his appeals. He pleads no facts to suggest how the allegedly improper review and consideration of his appeals amounted to a restraint on his freedom not contemplated by his original sentence. He does not allege that the handling of his appeals affected the conditions of his confinement or the duration of his sentence. Accordingly, Plaintiff's allegations regarding the handling of his appeals fail to state a claim under the Due Process Clause.

In the same count, Plaintiff also asserts that Defendants purported to limit him to one appeal per month, without prior notice or a hearing. (FAC ¶ 51.) However, Plaintiff has not alleged that he needed to file more than one appeal per month. Further, the FAC asserts that Degeus and Grannis "purported" to limit the number of Petitioner's appeal. (*Id.*) It is unclear whether the limitation was actually imposed and caused injury to Plaintiff. Accordingly, Plaintiff's allegations regarding the limit on the number of appeals he was permitted to file fail to state a claim under the Due Process Clause. The Court thus **GRANTS** Defendants' Motion to Dismiss as to Count 9 of the FAC.

## IX.    Count 10: Plaintiff's Claims Against Defendants Rimmer, Maldonado, Fischer, Ruff, Roman, and Willis

Plaintiff asserts that Defendants R. Rimmer, M. Maldonado, Everett W. Fischer, Michael Ruff, Reuben Roman, and T. Willis violated his "due process right to accurate file information." (FAC ¶ 52.) Plaintiff alleges that his prison file contains confidential information provided by informants. (*Id.*) He does not specify the nature of this information. However, he asserts that a deputy attorney general and prison officials have determined that this information is false. (*Id.*) Despite this, Plaintiff asserts that Rimmer, Maldonado, Fischer, Ruff, and Roman "are useing [sic] the information against Plaintiff." (*Id.*)

Plaintiff also asserts that on February 23, 2005, Maldonado wrote a confidential memo alleging that a confidential informant had reported that Plaintiff was involved in gang activities. (*Id.* ¶ 54.) Plaintiff asserts that Rimmer, Fischer, Ruff, and Roman are members

of a gang validation committee. (*Id.* ¶ 55.) According to Plaintiff, the committee failed to investigate whether the information in Maldonado's memo was reliable and instead "accepted it to be true." (*Id.*) Plaintiff also asserts that Willis fabricated charges against Plaintiff alleging that he was in possession of a controlled substance. (*Id.* ¶ 56.)

As noted above, Defendants Fischer, Roman, and Ruff have not been served and are therefore **DISMISSED** without prejudice. As to the other Defendants named in Count 10, the Court declines to adopt the R&R and finds that Plaintiff has failed to state a claim for violation of his right to accurate prison records. As stated previously, to allege a due process claim challenging the accuracy of prison records, a plaintiff must allege that there is a state-created liberty interest in accurate prison records. *See Hernandez*, 833 F.2d at 1318-19. Plaintiff does not allege that there is a state-created liberty interest in accurate prison records. Further, Plaintiff does not allege whether he has fulfilled any procedural requirements for challenging the accuracy of his prison record. In addition, other than Plaintiff's claim that his file contains false allegations of drug possession, Plaintiff fails to specify the nature of the information in his file or why it is false. The Court therefore **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's Due Process claim against Rimmer, Maldonado, and Willis.

**X.    Count 11: Plaintiff's Claims Against Defendants Giurbino, Maldonado, and Renteria**

Plaintiff alleges Due Process and First Amendment claims against Defendants Giurbino, Maldonado, and Renteria. Specifically, Plaintiff alleges that on April 7, 2005, he was denied "all forms of due process" at a "classification hearing" conducted by Defendant Giurbino. (FAC ¶ 59.) Plaintiff does not explain what a classification hearing is, nor does he describe what process was denied to him. Plaintiff filed an inmate appeal regarding the classification hearing. (*Id.*) On June 1, 2005, Lieutenant Ryan interviewed Plaintiff regarding his appeal. (*Id.* ¶ 60.) Ryan told Plaintiff that her recommendation would be to release Plaintiff to general population. (*Id.*) Plaintiff's appeal was then assigned to Defendant R. Renteria. (*Id.* ¶ 61.) According to Plaintiff, Renteria altered documents to cover up violations of Plaintiff's due process rights. (*Id.*)

Plaintiff also asserts that he was ordered to send all of his books home because they were contraband. (*Id.*) Plaintiff was warned that if he was caught in possession of the books in the future, they would be used against him in the gang validation process. (*Id.*) Plaintiff asserts that prison officials believed that the books had a Black Guerilla Family ("BGF") gang ideology and served as recruitment materials for the gang. (*Id.* ¶ 63.) Plaintiff does not specify which Defendant ordered him to dispose of his books, or which Defendant warned him that the books could be used against him in the gang validation process. Even though Plaintiff sent the books home, Plaintiff alleges that Defendants Giurbino, Maldonado, and Hill used Plaintiff's possession of the books to validate him as a gang member. (*Id.*)

### A.    Plaintiff's Due Process Claim Regarding the Classification Hearing

Plaintiff alleges that he was denied "all forms of due process" at his classification hearing conducted by Defendant Giurbino. However, Plaintiff's allegations are too vague to state a claim for relief. Courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Plaintiff fails to describe the nature of the classification hearing or what interests were at stake during the proceeding. He does not explain what process should have been afforded to him during the proceeding. He also fails to allege that he suffered an injury as a result of the manner in which the classification hearing was conducted. In fact, Plaintiff does not even describe the outcome of the proceeding. The Court therefore **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's Due Process claim against Defendant Giurbino.

### B.    Plaintiff's Due Process Claim Regarding His Inmate Appeal

As noted above, there is no indication that Defendant Renteria has been served. Accordingly, the Court dismisses Plaintiff's claim against Renteria without prejudice. Further, Plaintiff's claim that Renteria tampered with his inmate appeal lacks specificity. Plaintiff alleges that Renteria "altered documents" to conceal violations of Plaintiff's due process rights, but he does not explain what documents were altered or how these alterations resulted in a coverup. Nor does Plaintiff explain whether Renteria's conduct resulted in injury or hardship.

The Court therefore **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's claim against Renteria for tampering with his inmate appeal.

### C.   Plaintiff's First Amendment Retaliation Claim

Plaintiff asserts that he was punished by Defendants Giurbino, Maldonado, and Hill "because of the choice of books [he] reads," and that this violates the First Amendment. (FAC ¶ 67.) Plaintiff was advised that certain books in his possession were contraband because they had a "BGF gang ideology" and served as recruitment materials for the gang. (*Id.* ¶ 63.) Plaintiff seems to allege that Defendants Giurbino, Maldonado, and Hill validated Plaintiff as a gang member based partly upon the books in his possession. (*Id.*).

As stated above, to state a First Amendment retaliation claim within the prison context, a plaintiff must allege: (1) a state actor took an adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68. An allegation of "harm that is more than minimal" from the alleged retaliation can satisfy the fourth element without an allegation of a chilling effect. *See id.*

Plaintiff's allegations do not present a cognizable claim for retaliation. Rather, the FAC indicates that Plaintiff was validated as a gang member partly because the books he once owned were believed to be recruitment materials for the BGF. Plaintiff does not assert that the books were unrelated to the BGF, or that prison officials were mistaken in believing that the books served as gang recruitment materials. Plaintiff therefore fails to allege that Defendants' validation of him as a gang member did not reasonably advance a legitimate correctional goal. If Defendants did indeed believe that the books were BGF recruitment materials, Defendants would have a valid penological interest in relying on them to classify Plaintiff as a gang member. *See Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) ("[P]risons have a legitimate penological interest in stopping prison gang activity."). The Court therefore **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's First Amendment retaliation claim against Giurbino, Maldonado, and Hill.

**XI.   Count 12: Plaintiff's Claims Against Defendants Fischer, Roman, and Ruff**

Plaintiff alleges that Defendants Fischer, Roman, and Ruff violated his due process and First Amendment rights.  Specifically, Plaintiff alleges that Fischer, Roman, and Ruff validated him as a BGF affiliate based on fourteen pieces of confidential information.  (FAC ¶ 71.)  As a result of this validation, he was placed in administrative segregation.  (FAC ¶ 74.)  Plaintiff alleges that the prison officer who was assigned to investigate Plaintiff's gang validation concluded that the information was unreliable.  (*Id.* ¶ 78.)

The Court agrees with the R&R and finds that these allegations fail to state a due process violation.  First, Defendants Fischer, Roman, and Ruff have not been served.  Second, Petitioner has failed to allege that he had a state-created liberty interest in remaining free from administrative segregation.  As stated above, a prisoner alleging a due process violation based on placement in administrative segregation must plead facts demonstrating an atypical and significant hardship.  *See Sandin*, 515 U.S. at 483-86.  Plaintiff has included no facts about the conditions in administrative segregation.  Plaintiff does not allege that the conditions in administrative segregation differed substantially from the conditions in Centinela's general population, nor does he allege that a significant degree of restraint was imposed upon him.  The Court therefore **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's due process claim against Fischer, Roman, and Ruff.

**XII.   Count 13:[2] Plaintiff's Claims Against Defendants Tilton and Woodford**

Plaintiff alleges that Defendants Jeanne Woodford and James Tilton violated his First and Fourteenth Amendment rights.  Specifically, Plaintiff alleges that Woodford and Tilton implemented rules that resulted in arbitrary policies regarding what type of reading material is considered contraband.  (FAC ¶ 82.)

As a preliminary matter, the Court notes that Tilton has not been served.  The Court therefore dismisses Plaintiff's claims against Tilton without prejudice.  *See* Fed. R. Civ. P. 4(m).

---

[2] Plaintiff labels his last two causes of action as Count 12.  To avoid confusion, the Court designates the last cause of action as Count 13.

As to Woodford, the Court agrees with the R&R and finds that Plaintiff has failed to state a claim against this Defendant. Plaintiff has failed to allege that Woodford personally participated in the alleged violation of Plaintiff's rights. A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). The inquiry into causation must be individualized and focused on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Woodford is the former director of the California Department of Corrections and Rehabilitation. Plaintiff complains of policies implemented at Centinela. The FAC does not allege that Woodford participated in the policymaking decisions at Centinela, or that she reviewed Centinela's policies. The Court therefore **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's claims against Woodford.

**XIII.  Defendants' Motion to Dismiss Plaintiff's Claims for Injunctive Relief**

Defendants argue that because Plaintiff fails to allege any ongoing or prospective violations of his constitutional rights, he is not entitled to injunctive relief. (Mot. to Dismiss at 14.) Among other forms of relief, Plaintiff seeks an injunction ordering Defendants to place Plaintiff back into the general population. Contrary to Defendants' assertions, Plaintiff has alleged ongoing violations of his constitutional rights. Plaintiff alleges that he is being held indefinitely in the SHU, and that he is being deprived of a liberty interest because he cannot be paroled while he is in the SHU. (FAC p. 30.) As stated above, these allegations satisfy the pleading requirements for a cause of action under the Due Process Clause. Because Plaintiff has adequately pleaded an ongoing constitutional violation, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's claims for injunctive relief.

**XIV.  Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies**

Defendants allege that Plaintiff has failed to exhaust his administrative remedies. (Mot. to Dismiss at 15.) The Supreme Court has held that "failure to exhaust is an affirmative

defense under the PLRA, and [] inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 127 S. Ct. 910, 919 (2007). The burden of raising and proving the absence of exhaustion is on the defendant. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Here, Defendants offer no evidence demonstrating that Plaintiff has failed to exhaust the available remedies regarding his claims. Nor do Defendants specify what level of administrative review Plaintiff failed to exhaust, or which claims remain unexhausted. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's claims for failure to exhaust administrative remedies.

## XV.   Leave to Amend

Pursuant to the Federal Rules of Civil Procedure, "[l]eave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Moreover, "[t]he standard for granting leave to amend is generous." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990). It "should be granted 'if it appears at all possible that the plaintiff can correct the defect.' " *Id.* (quoting *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 789-90 (9th Cir. 1963)); *see also Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

Because there is at least some possibility that Plaintiff can correct the defects in his Complaint, leave to amend is **GRANTED**. The Court acknowledges that the operative pleading is the Fourth Amended Complaint. Plaintiff's Third Amended Complaint, however, was dismissed as a mass of disorganized allegations, which made it impossible to inform Plaintiff of the pleading deficiencies. Therefore, one last opportunity to amend is appropriate. Plaintiff is warned that this will be his final opportunity to allege his claims.

## XVI.   Motion for a More Definite Statement

Defendants move for a more definite statement, arguing that it is difficult to discern from the FAC the nature and scope of Plaintiff's claims. (Mot. to Dismiss at 18.) The test in evaluating a motion for a more definite statement under Federal Rule of Civil Procedure 12(e) is whether the complaint provides the defendant with a sufficient basis to frame a responsive

1    pleading.  *See* Fed. R. Civ. P. 12(e); *Fed. Sav. & Loan Ins. Corp. v. Musacchio*, 695 F. Supp.

2    1053, 1060 (N.D. Cal. 1988).  Generally, the court will require a more definite statement only

3    when the complaint is so vague that the opposing party cannot respond in good faith or without

4    prejudice to himself.  *See Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996).

5        As noted throughout this Order, there are several places in the FAC where it is difficult

6    to discern the nature of the claims Plaintiff intends to assert against Defendants, or where the

7    factual allegations are so vague that it is impossible to determine what conduct Plaintiff is

8    challenging.  As stated above, the Court has granted Plaintiff leave to amend the FAC in order

9    to cure each pleading deficiency noted in this Order.  The Court therefore **GRANTS**

10   Defendants' Motion for a More Definite Statement as to each cause of action where Plaintiff

11   has failed to state a claim for relief.  The Court reminds Plaintiff that he will be given one last

12   opportunity to identify, with as much clarity and specificity as possible, what constitutional

13   rights each defendant has violated and what facts support the alleged violations.

*Conclusion*

14       For the reasons stated above, the Court **ORDERS** that:

15       (1) Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN**

16   **PART**.

17       (2) The Court **DISMISSES** from this action Defendants Cook, Dexter, Eason,

18   Gonzalez, Guillen, Hudson, Masters, Parks, Rodriguez, Salazar, J. Stokes, M. Stokes, Trevino,

19   Fischer, Renteria, Roman, Ruff, and Tilton.

20       (3) Plaintiff is **GRANTED** thirty (30) days from the date stamped "Filed" on this order

21   to file a Fifth Amended Complaint which addresses each pleading deficiency noted above.

22   Leave to amend is granted only as to the claims raised in the Fourth Amended Complaint.  No

23   new claims shall be alleged.  The Fifth Amended Complaint must be complete in itself without

24   reference to the original Complaint.  *See* Local Rule 15.1.  All claims not re-alleged in the

25   Amended Complaint will be deemed to have been waived.  *See King v. Atiyeh*, 814 F.2d 565,

26   567 (9th Cir. 1987).  The Fifth Amended Complaint shall be Plaintiff's final pleading.

(4) Defendants' Motion for a More Definite Statement is **GRANTED** as to each cause of action where Plaintiff has failed to state a claim for relief.

**IT IS SO ORDERED.**

DATED:  September 25, 2007

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

CC:     All Parties and Counsel of Record
        Magistrate Judge Cathy Ann Bencivengo

05cv1475-J (CAB)