UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| RICKY GRAY, | Civil No. | 05-CV-1475 MMA (CAB) |
|---|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION:** | |
| v. | **(1) DENYING DEFENDANTS' OBJECTIONS TO PLAINTIFF'S EVIDENCE** | |
| JEANNE WOODFORD, et al., | **(2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** | |
| Defendants. | **[Doc. Nos. 250, 229]** | |

## I. INTRODUCTION

Plaintiff Ricky Gray ("Plaintiff"), a state prisoner proceeding *pro se*, brought this action for violations of his civil rights under 42 U.S.C. § 1983. Defendants filed a motion for summary judgment pursuant to FED.R.CIV.P. 56. [Doc. No. 229.] Plaintiff opposed the motion. [Doc. No. 241.] On December 23, 2009, Defendants filed a reply to Plaintiff's opposition and objections to Plaintiff's evidence. [ Doc. Nos. 249, 250.] For the reasons that follow, the undersigned Magistrate Judge recommends that Defendants' motion be **GRANTED.**

///

///

1

## II. PROCEDURAL HISTORY

Plaintiff's case was transferred from the United States District Court for the Central District of California. The last operative pleading in the Central District was the Third Amended Complaint. On December 5, 2005, the case was transferred to the undersigned.

Plaintiff filed his Fifth Amended Complaint ("FAC") on October 4, 2007. [Doc. No. 122.] On November 16, 2007, Defendants again filed a motion to dismiss or, in the alternative, for a more definite statement. [Doc. No. 128.] On September 19, 2008, the Court issued an order on Defendants' motion to dismiss, denying the motion as to the First Amendment retaliation claim against Defendant Zaragoza (Count One), the First Amendment retaliation claim against Defendant Maldonado (Count Five), and the Due Process claim against Defendant Maldonado (Count Six). [Doc. No. 147.] Plaintiff's other claims were dismissed.[1] [*Id.*] On November 3, 2008, Defendants filed their Answer. [Doc. No. 151.] On January 9, 2009, this Court entered a Case Management Conference Order Regulating Discovery and Other Pretrial Proceedings. [Doc. No. 171.] Defendants now move the Court for summary judgment on Plaintiff's three remaining claims and have filed evidentiary objections to Plaintiff's Evidence Submitted in Opposition to Motion for Summary Judgment. [Doc. No. 250.] In addition, the Court has advised Plaintiff of his rights and obligations to oppose Defendants' Motion pursuant to *Klingele v. Eikenberry,* 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc). [Doc. No. 231.]

## III. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden may be met by showing that there

---

[1] Plaintiff makes reference to a number of these dismissed claims and dismissed defendants throughout his opposition to the summary judgment motion. These claims and defendants are no longer before the Court. This case is limited to three claims and two defendants. The Court has thoroughly reviewed all of Plaintiff's exhibits and statements made in opposition to Defendants' motion. Evidence that goes to dismissed claims or parties is not relevant to this motion.

is an absence of evidence to support the nonmoving party's case. *See id.* at 325. If the moving party satisfies this burden, the opposing party must go beyond the pleadings and "set forth specific facts" to show a genuine issue for trial. *See id.* at 323-324; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir. 1989).

"A '*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir. 1989) (internal citation omitted). A "material" fact is one that is relevent to an element of a claim or defense and whose existence might affect the outcome of the suit. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The materiality of a fact is thus determined by the substantive law governing the claim or defense. *Anderson,* 477 U.S. at 252; *Celotex,* 477 U.S. at 322; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Although the evidence is "viewed in the light most favorable to the nonmoving party," *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000), there is no genuine issue of fact if a rational trier of fact could not, after reviewing the record as a whole, find in favor of the party opposing the motion for summary judgment. *Taylor*, 880 F.2d at 1045 (citing *Matsushita*, 475 U.S. at 586). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 248). Furthermore, conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. *Taylor*, 880 F.2d at 1045.

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitutions or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds by *Daniels v. Williams,* 474 U.S. 327, 328 91986); *see Haygood v. Younger*, 769F.2d 1350, 1354 (9th Cir. 1985) (en banc). Here, there appears to be no dispute that Defendants acted under color of state law in their individual capacities as Centinela State Prison officials. *West v. Atkins*, 487 U.S. 42, 49 (1988). Thus, this case turns on the second inquiry: whether Defendants deprived Plaintiff of any constitutional rights.

///

**B.     Defendants' Objections to Plaintiff's Evidence**

Defendants filed evidentiary objections to Plaintiff's evidence in support of his opposition. [Doc. No. 250.] The Court has considered these objections and overrules each one. *See Hollingsworth Solderless Terminal Co. V. Turley*, 622 F.2d 1324, 1335, fn. 9.

**C.     Retaliation Claims**

Prisoners maintain their First Amendment right to file prison grievances. *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). Retaliating against prisoners for exercising this right amounts to a constitutional violation. *Id.* A plaintiff suing prison officials pursuant to § 1983 for retaliation must show: (1) an adverse action was taken against the prisoner (2) because he exercised his constitutional right, (3) the defendants' actions harmed him, *see Resnick v. Hayes,* 213 F.3d 443, 449 (9th Cir. 2000); *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997); *Rhodes*, 408 F.3d at 567-68; and (4) the alleged retaliatory action "[did] not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).

Courts must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (quoting *Sandin v. Conner,* 515 U.S. 472, 482 (1995)). Thus, the burden is on the prisoner to allege facts which demonstrate that there were no legitimate correctional purposes motivating the actions he complains of." *Id.* at 808; *Bruce v. Ylst,* 351 F.3d 1283, 1289 (9th Cir. 2003).

As stated above, Plaintiff must provide sufficient evidence to show a causal connection between the allegedly retaliatory conduct and the action that purportedly provoked the retaliation. In fact, a plaintiff must produce sufficient evidence to show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act. *Soranno's Gasco*, *Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1990) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). 'A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)).

///

///

### 1. Defendant Zaragoza

On February 24, 2004, Plaintiff arrived at Centinela State Prison ("Centinela"), after his transfer from California State Prison at Lancaster. [Decl. Zaragoza at ¶ 3.] Plaintiff alleges that upon his arrival at Centinela, some of his personal property items were withheld. [FAC, p. 5.] Plaintiff inquired of correctional sergeant Zaragoza about these items. [*Id*.] Plaintiff states that Zaragoza "became highly agitated, using disrespectful and abusive language." [*Id*.] Plaintiff told Zaragoza that Zaragoza's conduct violated California Code of Regulations. [*See id*.] Zaragoza "singled out Plaintiff" and informed him that he was in violation of the grooming standards because he was not shaved. [*Id*.] Plaintiff asserted that he had a medical condition which excepted him from the standards. [*Id*.] To punish Plaintiff, Zaragoza allegedly moved him from the common holding cell to an "isolated" one and refused to issue Plaintiff lunch. [*Id*.]

The next time Defendant Zaragoza came into contact with Plaintiff was while processing Plaintiff's property on March 3, 2004. [Decl. Zaragoza at ¶ 4.] At that time, Plaintiff claims he gave Officer Gonzalez an inmate appeal regarding Zaragoza's alleged misconduct during their initial meeting. [FAC, p. 6; Opp'n at p. 24.] Gonzalez allegedly gave the appeal to Zaragoza for review. [FAC, p. 6.] Zaragoza then confiscated Plaintiff's "medically prescribed" boots and withheld "$700 worth" of Plaintiff's other personal property.[2] [*Id*. at 7; Opp'n at p. 24-25.] Plaintiff further states that there was no legitimate correctional purpose for Defendant Zaragoza's manner of processing his property.[3] [Opp'n at p. 27.]

Plaintiff's retaliation claim fails for several reasons. First, the evidence does not support Plaintiff's assertion that, in response to Plaintiff filing a complaint against Defendant Zaragoza for the use of disrespectful and abusive language on February 24, 2004, Defendant Zaragoza purposely denied him property items that he was entitled to. Specifically, no retaliatory intent can be inferred based on the timing of Plaintiff's filed complaint and the time when Defendant Zaragoza denied Plaintiff his

---

[2]The "$700 worth" of property included tennis shoes, blue jeans, a clock, typewriter, photo album, CD holder, and headphone extension cord.

[3]Plaintiff attached a declaration to his Opposition. Plaintiff's declaration contains numerous allegations of law. The Court, however, does not need to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981.)

property.  This is shown by the following undisputed facts:

1. Plaintiff dated an inmate appeal form—characterized as a staff complaint as indicated by his reference to California Code of Regulations, Title 15, section 3391—on March 2, 2004.  The form was date stamped as received by the inmate appeals office on March 4, 2004.  [Decl. Degeus at ¶ 5(a), Ex. B, bates no. 003; Decl. Gray, Ex. 43.]

2. The staff complaint was received via institutional mail by D. DeGeus, Centinela's appeals coordinator, for screening.  On March 5, 2004, Degeus forwarded a screen-out form to Plaintiff in order to have him clarify which 'Officer Gonzalez' Plaintiff's complaint referred to.  [Decl. Degeus at ¶ 5(c), Ex. B, bates no. 006.]

3. Plaintiff corrected his appeal form by adding language to the attached handwritten page indicating that "[Officer] Gonzalez is the hispanic female that works in R&R...."  After clarifying Gonzalez's identity, Plaintiff raises allegations against Defendant Zaragoza for the first time on the appeal form.  This amended form was date stamped as received by inmate appeals on March 12, 2004.  [*Id*. at bates nos. 0003-005.]

4. Plaintiff's property was processed by Defendant Zaragoza on March 3, 2004.  [Decl. Zaragoza at ¶ 4-9, Ex. B.]

5. On April 13, 2004, DeGeus forwarded Plaintiff's appeal to the Warden's office for classification.  [Decl. Degeus at ¶ 6, Ex. B, bates no. 007.]  Following the Warden's classification of the appeal, it was screened out as being duplicative of Plaintiff's more recent appeal regarding Defendant Zaragoza.  [*Id*. at bates no. 008.]

The Court finds, based on the above sequence of events and undisputed facts, that the timing does not evidence retaliatory intent.  On March 3, 2004, the date Plaintiff's property was processed, Defendant Zaragoza was not aware that Plaintiff had filed a prison grievance.  Plaintiff's grievance was not received until after Plaintiff's property was processed.  Although Plaintiff claims that he directly handed his complaint to Officer Gonzalez on March 2, 2004, who then handed the complaint to Defendant Zaragoza, the record as a whole could not lead a rational trier of fact to find for Plaintiff—the nonmoving party.  *See Matsushita*, 475 U.S. at 586-587.  The exhibit submitted by Plaintiff himself supports the Defendant's representation that he was not aware that Plaintiff had made a complaint at the

time Plaintiff's property was processed. *See* Decl. Gray, Ex. 43. Plaintiff's Exhibit 43 makes no mention of Defendant Zaragoza and is date stamped March 4, 2004, and again March 12, 2004. Thus, there is no genuine issue of material fact and Plaintiff's recollection of the timing of the events is directly contradicted by the dates present on documents in the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

Plaintiff's retaliation complaint also concerns actions allegedly taken as further retaliation for an appeal filed against Defendant Zaragoza on March 12, 2004.[4] [Opp'n at p. 26, Ex. 50.] Plaintiff claims that Defendant Zaragoza gave Plaintiff's boots and tennis shoes to other inmates rather than allowing Plaintiff to mail his belongings home because Plaintiff filed an additional appeal against him. [*Id*.] The boots Plaintiff refers to are his soft-soled Phat Pharm boots that he did not have a valid medical chrono for at the time his property was processed. Although Plaintiff was permitted to mail the boots home and filled out a form to have the boots mailed to the manufacturer, these boots were lost and did not make it to the manufacturer. [Decl DeGeus, Ex. E, bates nos. 73-77.]

Defendant Zaragoza learned of the March 12 appeal from Centinela's Litigation Coordinator on March 18, 2004. [Decl. DeGeus at ¶ 8; Decl. Zaragoza at ¶ 11.] This appeal was subsequently screened-out as duplicative of Plaintiff's appeal no. 04-CEN-0380. [*Id.*] According to the record, Defendant Zaragoza learned of appeal no. 04-CEN-0380 from Centinela's Litigation Coordinator on March 17, 2004—one day before learning of appeal no. 04-CEN-0403. [Decl. DeGeus at ¶ 7; Decl. Zaragoza at ¶¶ 11-12.] Defendant Zaragoza was interviewed regarding appeal no. 04-CEN-0380 in April, 2004, but had no other involvement with this appeal. [Decl. Zaragoza at ¶ 12.]

Plaintiff filed another appeal regarding the denial of his property, appeal no. 04-CEN-402. [Decl DeGeus, Ex. E, bates no. 68.] In response to this appeal, Defendant Zaragoza interviewed Plaintiff on April 21, 2004. [Decl. Zaragoza at ¶ 13; Decl DeGeus, Ex. E, bates no. 72.] This appeal was a property complaint, not a staff complaint. [Decl DeGeus at ¶ 9, Ex. E.] However, on July 2, 2004, Plaintiff signed a form indicating that he was releasing appeal nos. 04-CEN-402 and 04-CEN-500 in exchange

---

[4]The appeal Plaintiff references was assigned log no. 04-CEN-0403 as evidenced by Plaintiff's Ex. 50, as well as Decl. DeGeus, Ex. D.

for cosmetics and canteen items. [Decl. DeGeus at ¶ 9, Ex. E, bates no. 78; Decl. Zaragoza at ¶ 13, Ex. F.] The canteen and cosmetic provisions were offered in part to compensate Plaintiff for the misplacement of his boots that never made it back to the vendor. [Decl. Zaragoza at ¶ 13, Ex. F.] Defendant Zaragoza himself agreed to resolve these appeals with the above mentioned compensation. [*Id.* at Ex. F.]

Even assuming that Defendant Zaragoza was aware of Plaintiff's appeals at the time Plaintiff's boots were misplaced, Plaintiff has not created a genuine issue of material fact that Defendant Zaragoza did not act in accordance with legitimate penological goals in his initial decision to withhold these boots. Defendant Zaragoza initially withheld Plaintiff's boots because he did not have a valid medical chrono at the time his property was processed. Plaintiff admits that his medical chrono for the boots was expired at the time Defendant Zaragoza processed his property. [Opp'n at p. 27.] Plaintiff, however, argues in circular and conclusory fashion that he "can prove the claims he make [sic] against Defendant Zaragoza," and that "there was no legitimate correctional purpose in the manner Defendant Zaragoza process[ed] Plaintiff's property." [*Id.* at 26, 27.] Plaintiff argues that because Defendant Zaragoza made decisions concerning Plaintiff's property that were contradicted by Centinela's prisons operation procedure manual, Defendant Zaragoza's actions lacked a legitimate correctional purpose. [Opp'n at p. 25.]

Plaintiff's reasoning fails. Defendant Zaragoza submitted documentation and a declaration that shows that his decisions regarding Plaintiff's property were made to advance the legitimate penological goal of maintaining the safety and security of the institution. When processing Plaintiff's property, Defendant Zaragoza relied on Centinela's approved vendor item list. [Decl. Zaragoza at ¶ 5.] The 2003 list of approved items specifically disallowed zippers on blue jeans and mandated that all tennis shoes be 100% white. [*Id.* at Ex. C.] Defendant Zaragoza admits that he is now aware that discrepancies existed between the allowable property items listed in Centinela's Operational Procedures and those listed on the 2003 approved vendor items.[5] [*Id.* at ¶ 5.] This undisputed fact not only supports Defendant

---

[5] The approved vendor items list governs property items that prisoners may receive in quarterly packages. *See* Decl. Zaragoza at ¶ 5, Ex. C. Items found on Centinela's Operational Procedure list govern the property inmates may possess when arriving at Centinela from another institution. Not all items are permitted at all institutions. [Decl. Degeus, Ex. E, bates no. 90.]

Zaragoza's argument that he made decisions based on legitimate correctional goals, but also that any decisions he made incorrectly were not made in order to retaliate against Plaintiff for his protected speech, but were good faith mistakes. Plaintiff does not present any evidence to show that Defendant Zaragoza's actions lacked a legitimate correctional purpose. He merely states that some of the items withheld were allowed by Centinela's Operational Procedures. [Opp'n. at p. 27.] Plaintiff does not present any argument or evidence to refute Defendant Zaragoza's proffered evidence establishing his motivation and intent when making the decisions regarding Plaintiff's property. Any mistakes that Defendant Zaragoza or the other officers in Receiving and Release made were remedied to Plaintiff's satisfaction with the provision of canteen and cosmetics on July 2, 2004. [Decl. Zaragoza at ¶ 14, Ex. F.]

Lastly, Plaintiff's retaliation claim is based on Defendant Zaragoza's initial decision not to allow Plaintiff's electronic typewriter. Plaintiff alleges that Defendant Zaragoza falsely identified the typewriter as having a "floppy disk." [Opp'n at p. 25.] Plaintiff thereafter mailed his typewriter home. [*Id.*; *see also* Decl. Zaragoza at ¶ 9, Ex. E.] Plaintiff then filed an appeal, challenging the requirement that he first obtain approval from the Warden to posses an electric typewriter that he possessed at his prior institution. [Decl. Gray, Ex. 46.] Eventually Warden Giurbino made an exception, pursuant to Centinela's Department Operations Manual, for Plaintiff to receive an electric typewriter without memory capability. [Decl. Zaragoza, Ex. E.] On October 18, 2004, Plaintiff received authorization from Chief Deputy Warden Salazar to receive his Brother ML-500 typewriter from his family rather than an outside vendor. [Decl. Gray, Ex. 47; Decl. Zaragoza, Ex. E.]

With respect to the typewriter, Plaintiff fails to raise a genuine issue of material fact that the filing of a grievance was a substantial or motivating factor in Defendant Zaragoza's decision to confiscate the typewriter. First, the typewriter was confiscated on February 24, 2004, when Plaintiff arrived at Centinela. This took place prior to Plaintiff filing any grievance. Even assuming *arguendo* that Defendant Zaragoza received Plaintiff's grievance on March 2, 2004, the typewriter was confiscated days before. [*See* Decl. Gray, Ex. 46; Decl. DeGeus, Ex. C, bates no. 30.] Second, Plaintiff offers no evidence, other than the undisputed fact that he was not initially allowed his typewriter, to demonstrate that the denial was motivated by Plaintiff's complaint. The refusal to permit an electric

typewriter, in itself, does not raise an inference that Plaintiff's filing of a grievance was a substantial or motivating factor in the decision. Rather, the record indicates that the initial decision not to permit Plaintiff's typewriter was based on the policies and procedures of the correctional institution. [Decl. DeGeus, Ex. C, bates nos. 31, 37, 44; Decl. Zaragzoa, Ex. E.; Decl. Gray, Ex. 45 (stating that typewriters shall be portable non-electric and that warden may make exception to allow an electric typewriter on an individual basis).]

For the reasons stated above, the Court finds that Plaintiff has provided sufficient evidence to show a causal connection between the allegedly retaliatory conduct and the action that purportedly provoked the retaliation. Furthermore, Plaintiff has not met his burden of proof to demonstrate that Defendant Zaragoza acted without a legitimate penological purpose. Therefore, this Court recommends that Defendant Zaragoza's motion for summary judgment based on Plaintiff's retaliation claim be GRANTED.

### 2. Defendant Maldonado

Plaintiff alleges that Defendant Maldonado conducted a gang validation investigation and placed him in administrative segregation on March 20, 2005, pending the finality of the investigation, in retaliation for Plaintiff's activity as a jail house lawyer and submission of staff misconduct complaints. [FAC at p. 20.] Defendant Maldonado received a report from Lieutenant Denault regarding Plaintiff on or about March 16, 2004. [Decl. Maldonado at ¶ 3; Opp'n at p. 14 ¶ 21.] Lieutenant Denault informed Defendant Maldonado about Plaintiff's self-identification as a Black Guerilla Family ("BGF") prison gang drop-out and directed Defendant Maldonado to begin an investigation into Plaintiff's gang status.[6] [Decl. Maldonado at ¶ 5, Ex. A, B.] Plaintiff did not file a grievance against Defendant Maldonado until August 8, 2004, and that appeal was not date stamped as received until August 9, 2004. [Decl. DeGeus at ¶ 13, Ex. G, bates no. 123.] In this grievance Plaintiff alleges that the warden and Defendant Maldonado—the institutional gang investigator—single out black inmates when doing gang investigations. [*Id.*] Plaintiff alleges that the gang validation investigation was initiated solely to harass

---

[6]On March 16, 2004, Officer Sidhu was preparing cell moves and asking inmates for their gang affiliations to help facilitate the celling process. "Plaintiff was asked for his affiliation and he told [Officer Sidhu] that he should not be moved from th[e] building due to his being a BGF dropout...." [Decl. Maldonado, Ex. A.]

10                                                                                          05cv1475

him because of his litigation history. [*Id*.]

The undisputed facts indicate that the investigation into the Plaintiff's gang affiliation began within the first month of Plaintiff's arrival at Centinela. Defendant Maldonado was requested to investigate and corroborate Plaintiff's BGF status after Plaintiff self-identified on March 16, 2004. [Dec. Gray, Ex. 18.] At the time the investigation began and at the time Plaintiff's cell was searched, Defendant Maldonado was not involved in any of Plaintiff's litigation matters or staff grievances. [Decl. DeGeus, Ex. H.] In fact, Plaintiff's grievance was not filed until <u>after</u> his cell was searched on August 5, 2004, as part of the already ongoing investigation into his BGF status. [Decl. DeGeus at ¶ 13, Ex. G, bates no. 123.] On March 30, 2005, Plaintiff was advised that the ongoing investigation into his BGF activities was nearing completion and that it had been determined that he was involved with BGF activities, and therefore was being placed in administrative segregation in an effort to protect the safety and security of the institution. [Decl. Maldonado, Ex. C.]

There is no merit to Plaintiff's contention that no legitimate correctional goal was served by investigating Plaintiff's gang status, finding source items, and recommending that Plaintiff be re-validated as a BGF member. In the Ninth Circuit, prisons clearly have a legitimate penological interest in curtailing prison gang activity. *Bruce*, 351 F.3d at 1289. The prisoner bears the burden of proving and pleading the absence of a legitimate penological goal, but the gang validation procedure may not be used as a "cover up or ruse" to silence prisoners that assert their First Amendment rights. *Id*. Here, the undisputed evidence shows that Defendant Maldonado did not independently initiate the investigation into Plaintiff's gang status because Plaintiff considers himself and is allegedly widely known as a "prolific inmate appeals writer." The investigation began relatively soon after Plaintiff arrived at Centinela and was initiated in response to Plaintiff's self-identification as former BGF.

Plaintiff further argues that if a legitimate penological interest existed for Defendant's investigation into Plaintiff's gang status, Defendant would have placed Plaintiff in administrative segregation sooner. [Opp'n at ¶¶ 20-26.] Plaintiff was not placed in administrative segregation until Defendant Maldonado had conducted a thorough investigation and had sufficient information to corroborate Plaintiff's BGF activities. [Decl. Maldonado at ¶ 10.] At the time Plaintiff was placed in administrative segregation it served the purpose of maintaining institutional safety and security—a

critical goal of the penological system. *See Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979). Plaintiff's allegations that his validation was in retaliation for his jailhouse lawyering activities and inmate appeals does not discredit the security goal of removing Plaintiff from the general population based on evidence of his BGF affiliation. Plaintiff has failed to raise a triable issue of fact as to whether there was an absence of legitimate penological goals for Defendant Maldonado's investigation, and accordingly, it is recommended that Defendant's motion for summary judgment be GRANTED on this retaliation claim.

### D. Due Process Claim

Plaintiff contends he was denied due process because Defendant Maldonado did not have sufficient evidence to validate him as a member of the BGF prison gang. This due process claim is subject to the "some evidence" standard of *Superintendent v. Hill*. 472 U.S. 445, 455 (1985). This standard applies because California's policy of placing suspected gang affiliates in the Security Housing Unit is not a disciplinary measure, but an administrative strategy designed to preserve institutional safety and security. *Bruce*, 351 F.3d at 1287 (citing *Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir. 1997)). In accordance with the due process requirement set forth in *Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir. 1986), Plaintiff received notice of the charges against him and the chance to present his thoughts to officials regarding the decision to validate him as an active BGF member. Accordingly, under the "some evidence" standard, the Court "do[es] not examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is whether there is any evidence in the record that could support the conclusion.'" *Bruce*, 351 F.3d at 1287 (citing *Hill*, 472 U.S. at 455-456).

Here, there certainly was some evidence in the record to support the conclusion that Plaintiff was actively involved with BGF. The record includes evidence of Plaintiff's previous status as a validated BGF member: (1) confidential memorandums referencing documents and materials found in Plaintiff's property that are consistent with BGF recruitment and training, (2) a document indicating that a suspected, and later validated BGF member possessed a list identifying Plaintiff as a BGF member, (3) numerous statements from confidential prison informants, (4) a report referencing an incident where Plaintiff held up a photograph of George Jackson—the recognized founder of the BGF—and finally, (5) a letter from a known BGF member to Plaintiff, intercepted by prison officials. Any one of these pieces

of evidence would have qualified to support Plaintiff's validation because each has "sufficient indicia of reliability." *Bruce*, 351 F.3d at 1288 (citing *Toussaint v. McCarthy,* 926 F.2d 800, 803 (9th Cir. 1990)).

Plaintiff claims he was denied due process because the decision to revalidate him was not supported by reliable evidence. [Opp'n at ¶ 10.] Plaintiff has especially challenged the reliability of information provided by confidential informants and has gone so far as to obtain affidavits from some confidential informants which state that they do not believe Plaintiff is a member of BGF. [*Id*. at ¶ 20.] The Office of Correctional Safety (OCS), however, considered nine source items in making the determination that Plaintiff's status should be returned to "active" BGF. [Supp. Decl. of E. Fischer at ¶ 6.] According to California Code of Regulations, Title 15, section 3341.5(6):

> As provided at section 3378(f), an inmate categorized as inactive or validated as a dropout of a prison gang and placed in the general population may be returned to segregation based upon one reliable source item identifying the inmate as a currently active gang member or associate of the prison gang with which the inmate was previously validated. Current activity is defined as, any documented gang activity within the past six (6) years.

Even setting aside all source items stemming from confidential informants, more than one reliable source item existed to revalidate Plaintiff. [Supp. Decl. of E. Fischer at ¶ 12.] The following source items did not involve confidential informants and were more than sufficient to support the decision to change Plaintiff's gang affiliation status to active:[7]

(1) a confidential memorandum, dated May 12, 2005, containing documents and materials found in Plaintiff's property, including literature by George Jackson, that are consistent with BGF training and recruitment;

(2) a confidential memorandum, dated December 21, 2004, containing a phone book with information on BGF associates and members;

(3) a CDC-128B, dated September 8, 2004, documenting a search by staff at Pelican Bay State Prison that resulted in the discovery of Plaintiff's name and CDC number included in a hand-written list of gang members and associates;

(4) a CDC-128B, dated October 30, 2004, documenting Plaintiff's display of a photograph of George Jackson;

---

[7]Source items prison officials may rely on to determine an inmate's gang involvement are listed at California Code of Regulations, Title 15, section 3378(c)(8).

(5)  a confidential memorandum, dated May 31, 2001, indicating that staff intercepted a letter addressed to Gray, authored by a validated BGF member.

[*See* Decl. of E. Fischer at ¶ 10(a), (c), (e), and (h); Decl. of Maldonado, Ex. D.]

Based on the above, the Court finds Plaintiff has failed to create a triable issue with respect to the constitutional adequacy of the evidence relied upon to revalidate him as an active gang member. Prison officials have demonstrated that they relied on "some evidence" with sufficient indicia of reliability to find Plaintiff an active BGF member. Accordingly, it is recommended that summary judgment be GRANTED in favor of Defendant on this claim.

**E.  Qualified Immunity**

Defendants seek summary judgment on qualified immunity grounds. Because the Court has found no genuine issue of material fact in dispute regarding the alleged violations of Plaintiff's constitutional rights, the Court need not reach any issues regarding qualified immunity. *See County of Sacramento v. Katz*, 533 U.S. 194 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

## V.  CONCLUSION AND RECOMMENDATION

Having reviewed the matter, the undersigned Magistrate Judge recommends that:

1.  Defendants' Motion for Summary Judgment be **GRANTED** in full.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636 (b)(1).

**IT IS ORDERED** that no later than **March 12, 2010**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties within **10 days** of being served with the objections.

**IT IS SO ORDERED.**

DATED: February 10, 2010

CATHY ANN BENCIVENGO
United States Magistrate Judge