1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **SOUTHERN DISTRICT OF CALIFORNIA**
10

11 | RICKY GRAY, | CASE NO. 05CV1475-MMA (CAB) |

Plaintiff,

**ORDER:**

**(1) OVERRULING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION;**

[Doc. No. 254]

vs.

**(2) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION;**

[Doc. No. 252]

**(3) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**

[Doc. No. 229]

JEANNE WOODFORD et al,

Defendants.

**(4) GRANTING IN PART AND DENYING IN PART DEFENDANTS' EX PARTE APPLICATION FOR AN ORDER TO SEAL THE COURT FILE**

[Doc. No. 256]

///

///

Plaintiff Ricky Gray, a state prisoner proceeding *pro se* and *in forma pauperis*, filed the instant action for alleged violations of his civil rights pursuant to 42 U.S.C. § 1983. On September 15, 2009, Defendants M. Maldonado and R. Zaragoza filed a motion for summary judgment as to all claims. (Doc. No. 229.)  Plaintiff timely filed an opposition (Doc. No. 241) and Defendants timely replied (Doc. No. 249).  Before the Court is the assigned Magistrate Judge's report and recommendation ("R&R"), recommending that the Court grant Defendants' motion for summary judgment. (Doc. No. 252.) On February 26, 2010, Plaintiff filed objections to the R&R. (Doc. No. 254.) On March 12, 2010, Defendants replied to Plaintiff's objections. (Doc. No. 255.) For the reasons set forth herein, the Court **ADOPTS** the R&R in its entirety and **GRANTS** Defendants' motion for summary judgment.

Also pending before the Court is Defendants' ex parte application for an order to seal the court file. (Doc. No. 256.) Plaintiff filed a timely opposition (Doc. No. 259), and Defendants replied (Doc. No. 261). For the reasons set forth herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' ex parte application.

## BACKGROUND

Plaintiff's fifth amended complaint ("FAC") arises out of events that allegedly occurred after his transfer from Lancaster State Prison to Centinela State Prison. Plaintiff claims that Defendant correctional sergeant Zaragoza, an officer in Receiving and Release at Centinela, improperly withheld Plaintiff's personal property in retaliation for an inmate appeal Plaintiff had previously filed against him for Defendant's use of disrespectful and abusive language. Plaintiff's personal property included a pair of boots, tennis shoes, blue jeans, a clock, typewriter, photo album, CD holder, and headphone extension cord.

In the FAC, Plaintiff also asserts claims against Defendant Maldonado for conducting a gang validation investigation on Plaintiff and placing him in administrative segregation. Plaintiff asserts that Defendant Maldonado's conduct was retaliation for Plaintiff's activity as a jail house lawyer and submission of staff misconduct complaints. Plaintiff also asserts that he was denied due process because Defendant Maldonado did not have sufficient evidence to revalidate him as an active member of the Black Guerilla Family ("BGF") prison gang.

<u>LEGAL STANDARD</u>

**I.      Federal Rule of Civil Procedure 72(b) - Report and Recommendation**

A district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes. Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1). An objecting party may "serve and file specific written objections to the proposed findings and recommendations," and "a party may respond to another party's objections." Fed. R. Civ. P. 72(b).

In reviewing an R&R, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 676 (1980) (when objections are made, the court must make a de novo determination of the factual findings to which there are objections). "If neither party contests the magistrate's proposed findings of fact, the court may assume their correctness and decide the motion on the applicable law." *Orand v. United States*, 602 F.2d 207, 208 (9th Cir.1979). Objections must, however, be specific, not vague or generalized. *See* Fed. R. Civ. P. 72(b)(2) (requiring "specific" objections).

**II.      Federal Rule of Civil Procedure 56 - Motion for Summary Judgment**

A moving party is entitled to summary judgment only if the moving party can demonstrate that (1) "there is no genuine issue as to any material fact," and (2) it is "entitled to judgment as a matter of law." Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material issue of fact is one that raises a question that a trier of fact must answer to determine the rights of the parties under the substantive law that applies. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The initial burden is on the moving party to show that both prongs are satisfied. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will

bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (*quoting* Fed. R. Civ. P. 56(e)). The inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1180 (9th Cir. 2002). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

<u>**ANALYSIS**</u>

**I.    Retaliation Claim against Defendant Zargoza**

Plaintiff asserts that Defendant Zaragoza improperly refused to issue Plaintiff his property in retaliation for Plaintiff filing a 602 appeal against him. The Constitution provides protections against "deliberate retaliation" by prison officials for an inmate exercising his right to petition for redress of grievances. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Because retaliation by prison officials may chill an inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it would not otherwise rise to the level of a constitutional violation. *Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989).

In order to withstand a motion for summary judgment, a plaintiff suing prison officials for retaliation pursuant to Section 1983 must allege sufficient facts to create a triable issue of fact as to the following five elements: (1) a state actor took some adverse action against an inmate, (2) because of (3) that prisoner's protected conduct, and that such action (4) harmed the prisoner and (5) was not

narrowly tailored to advance a legitimate correctional goal. *See Rhodes v. Robinson*, 380 F.3d 1123, 1130 (9th Cir. 2004) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000)).

In the R&R, the Magistrate Judge recommends granting summary judgment on the basis that there is no triable issue of fact on the issue of causation. The Magistrate Judge concluded that the timing of Plaintiff's grievance compared with the timing of Defendant Zaragoza's conduct did not give rise to an inference of retaliatory intent. (*R&R* at 5:20–7:21.) Plaintiff contends that the Magistrate Judge erred because "the documents presented by plaintiff, don't support defendant Zaragoza was unaware Plaintiff filed a complaint," because Plaintiff gave officer Gonzalez his complaint against Defendant Zaragoza, and then "officer Gonzalez gave defendant Zaragoza Plaintiff's complaint . . . before any property was issued." (*Pl.'s Objections* at ¶ 28.) Plaintiff, however, fails to point to what evidence, if any, supports this assertion. In his opposition, Plaintiff offers Exhibit 43, which is a 602 grievance he filed alleging retaliatory conduct and the withholding of personal property. (*See Gray Decl.*, Ex. 43.) While the form is dated March 2, 2004, it did not originally identify any misconduct by Defendant Zaragoza, nor did it even include Defendant Zaragoza's name. There is no evidence that Officer Gonzalez gave this appeal to Defendant Zaragoza, other than Plaintiff's self-serving declaration, which is insufficient to create a triable issue of fact. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (holding that an uncorroborated self-serving declaration is insufficient to create a genuine issue of material fact). In addition, the evidence makes clear that Plaintiff failed to identify Defendant Zaragoza in the 602 grievance until he corrected it and resubmitted it to the appeals coordinator's office, which received the updated 602 grievance on March 12, 2010, after Defendant Zaragoza processed Plaintiff's property. (*DeGeus Decl.*, Ex. B.) There is simply no evidence that Plaintiff had filed a complaint against Defendant Zaragoza or that Defendant Zaragoza had any knowledge that Plaintiff filed a complaint against him prior to Defendant Zaragoza's conduct. Accordingly, the Court **OVERRULES** Plaintiff's objection to the R&R's analysis and conclusion on the issue of causation.

Even if Plaintiff established a triable issue of fact on the issue of causation, however, the Court notes that Plaintiff has failed to establish that a triable issue of fact exists on the element of harm. "[A]ny retribution visited upon a prisoner due to his decision to engage in protected conduct is

sufficient to ground a claim of unlawful First Amendment retaliation—whether such detriment "chills" the plaintiff's exercise of his First Amendment rights or not." *Rhodes*, *supra*, 380 F.3d at 1131. Thus, "[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights." *Vernon*, *supra*, 255 F.3d at 1127 (emphasis added). However, "[w]ithout alleging a chilling effect, a retaliation claim without allegation of other harm is not actionable." *Id.* (emphasis added).

Plaintiff has failed to offer any evidence that he suffered harm as a result of Defendant Zaragoza's actions. Plaintiff has failed to produce any evidence that Defendant Zaragoza's conduct prevented or chilled Plaintiff's protected speech. Indeed, the evidence before the Court demonstrates quite the contrary. For example, Plaintiff asserted in his deposition that he has filed, on average, between 30 and 40 602 grievances per year since Defendant's alleged conduct. (*See Gray Depo.*, *Aronis Decl.*, Ex. B at 161:4-6.) Based on this evidence, no reasonable juror could find that Defendant Zaragoza's conduct prevented or chilled Plaintiff's protected speech. The only other harm alleged by Plaintiff is the deprivation of property. Plaintiff, however, received a majority of his property on March 3, 2004. For the items Plaintiff did not receive, such items were either not permitted pursuant to department regulations,[1] or Plaintiff received compensation for such items to his satisfaction on July 2, 2004. (*Zaragoza Decl.*, Ex. 4.)  The injury suffered must be such that it "would chill a person of ordinary firmness" from engaging in the protected activity. *Pinard v. Clatskanie School Dist.*, 467 F.3d 755, 770 (9th Cir. 2006); *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000). Courts have only found retaliation claims sufficient where the action taken by the defendant was clearly adverse to the plaintiff. *See, e.g.*, *Rhodes*, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); *Bruce v. Y1st*, 351 F.3d 1283, 1288 (9th Cir. 2003) (retaliatory validation as a gang member for filing grievances); *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent

---

[1] Plaintiff takes issue with the fact that Defendant Zaragoza refused to provide Plaintiff with his soft-soled "Phat Pharm" boots. However, the evidence demonstrates that Defendant's conduct in withholding the boots was proper because they were not permitted under the regulations, and Plaintiff's medical chrono for them had expired. (*Zaragoza Decl.* at ¶ 7.) In addition, Plaintiff takes issue with Defendant Zaragoza withholding Plaintiff's typewriter. However, the typewriter was not permitted because Plaintiff had not received prior approval from Warden Giurbino. (*DeGeus Decl.*, Ex. C at bates nos. 031, 037, 044; *Zaragoza Decl.*, Ex. E; *Gray Decl.* Ex. 45.) Once Plaintiff obtained permission from the warden, Plaintiff was permitted to reacquire the typewriter from his family. (*Zaragoza Decl.*, Ex. E; *Gray Decl.*, Ex. 47.)

finding of guilt); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (retaliatory prison transfer and double-cell status); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); *Rizzo v. Dawson*, 778 F.2d 527, 530–32 (9th Cir. 1985) (retaliatory reassignment out of vocational class and transfer to a different prison). The deprivation of personal property which Plaintiff complains of is at most *de minimus*, and certainly not so egregious that a reasonable juror could find that such conduct would chill a person of "ordinary firmness" from exercising his or her First Amendment rights. Accordingly, the Court also finds that Plaintiff has failed to demonstrate a triable issue of fact on the element of harm. For these reasons, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the Magistrate Judge's report and recommendation, and **GRANTS** Defendants' motion for summary judgment on Plaintiff's claims against Defendant Zaragoza.

## II.     Retaliation Claim against Defendant Maldonado

Plaintiff asserts that Defendant Maldonado conducted a gang validation investigation and placed him in administrative segregation in retaliation for Plaintiff's activity as a jail house lawyer and his submission of staff misconduct complaints. (*FAC* at 20.) Defendant Maldonado asserts that he began conducting an investigation into Plaintiff's gang status after Plaintiff allegedly told an officer that he was a Black Guerilla Family ("BGF") dropout. (*Maldonado Decl.* at ¶ 5, Ex. A, B.)

The Magistrate Judge concluded that the evidence demonstrated that Defendant Maldonado did not independently initiate the investigation into Plaintiff's gang status because of Plaintiff's exercise of his First Amendment rights. (*R&R* at 11:13–22.) The Magistrate Judge also concluded that summary judgment was appropriate because Plaintiff had failed to demonstrate that the initiation of the investigation did not advance any legitimate penological goal. (*Id.* at 11:23–12:6.) Plaintiff objects on several grounds.

First, Plaintiff asserts that he was not able to interview potential witnesses to satisfy his burden on summary judgment. This objection is **OVERRULED**. The proper avenue for Plaintiff to object to such rulings on discovery motions was by way of objection pursuant to the provisions of Rule 72(a) of the Federal Rules of Civil Procedure. Plaintiff, however, failed to timely objection to any order. He may not do so now.

Second, Plaintiff asserts that had there been a legitimate penological interest for the investigation, Defendant would have placed Plaintiff in administrative segregation much sooner. The undisputed facts demonstrate that on March 16, 2004, Officer Sidhu reported that Plaintiff stated he was a BGF dropout. (*Gray Decl.*, Ex. 18.) That day, Lieutenant Denault placed Plaintiff in administrative segregation pending an investigation by Defendant Maldonado into Plaintiff's current gang status. (*Maldonado Decl.* at ¶ 5, Ex. B.)[2] In light of Plaintiff's self-identification, Defendant Maldonado states that Lieutenant Denault requested that he conduct an investigation into Plaintiff's status in the BGF. (*Id.*) On March 18, 2004, Plaintiff was released to general population. (*Id.* at ¶ 6.) Defendant Maldonado states that at that time, he had not yet begun the required investigation. (*Id.*) However, Defendant Maldonado states that he began investigating Plaintiff's gang status thereafter, which included ordering the search of Plaintiff's cell on August 4, 2004. (*Maldonado Decl.* at ¶¶ 5–7.) On August 9, 2004, the inmate appeals coordinator received a grievance by Plaintiff against Defendant Maldonado, in which Plaintiff contends that the warden and Defendant Maldonado single out black inmates when doing gang investigations, and that Defendant Maldonado initiated the gang validation investigation because of Plaintiff's litigation history. (*DeGeus Decl.* at ¶ 13, Ex. G, Ex. H.)

Plaintiff provides no evidence demonstrating that Defendant Maldonado had any knowledge of Plaintiff's litigation history at any time prior to initiating the investigation into Plaintiff's gang status. The Court notes that when Maldonado began investigating Plaintiff, Plaintiff had been at Centinela for less than a month. Plaintiff has not offered any evidence demonstrating that Plaintiff had filed a complaint against Defendant Maldonado prior to initiation of the gang validation investigation. Plaintiff also contends that Defendant Maldonado's investigation was concluded on March 18, 2004 when Plaintiff was released back to general population, and that any investigation that Defendant Maldonado conducted thereafter was retaliatory in nature. (*Pl.'s Objections* at 3 (citing *Pl.'s Objections*, Ex. A, Ex. B).) Plaintiff's evidence, however, merely reflects Plaintiff's transfer back to

---

[2]Plaintiff disputes that he ever told Officer Sidhu that he was a BGF dropout. (*Pl.'s Objections* at ¶ 1.) Plaintiff, however, offers only his uncorroborated statement as evidence of this alleged fact. Without more, and in light of the evidence offered by Defendant Maldonado on the issue, Plaintiff's self-identification as a BGF dropout is a fact that is not reasonably in dispute. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (holding that an uncorroborated self-serving declaration is insufficient to create a genuine issue of material fact).

administrative segregation and makes no reference to Maldonado's investigation. (*See Pl.'s Objections*, Ex. B.) Defendant Maldonado states that at the time, Plaintiff's self-identification as a BGF dropout, alone, was not enough to retain him administrative segregation. (*Maldonado Decl.* at ¶ 6.) There is simply no evidence to support Plaintiff's conclusory assertion that Defendant Maldonado's investigation was complete on March 18, 2004. There is also no evidence that Defendant Maldonado had any knowledge of Plaintiff's litigation history after March 18, 2004, but before the search of Plaintiff's cell on August 5, 2004, which was the subject of Plaintiff's first grievance against Defendant Maldonado. (*DeGeus Decl.* at ¶ 13, Ex. G at bates no. 123.) In light of these facts, the Court finds that Plaintiff has failed to offer any evidence that could lead a reasonable juror to find that Plaintiff's litigation history was the reason for Defendant Maldonado's investigation. To the contrary, the evidence calls for the conclusion that the only reason Defendant Maldonado began investigating Plaintiff's gang status was in response to Plaintiff identifying himself as a BGF dropout. Based on this evidence, the Magistrate Judge correctly concluded that Plaintiff failed to demonstrate that a triable issue of fact exists on the issue of causation.

In addition, Plaintiff fails to offer any evidence to support his contention that the investigation served no legitimate correctional goal. The law is clear that prisons have a legitimate penological interest in curtailing gang activity. *See Bruce, supra*, 351 F.3d at 1289. As he does in his opposition to the motion for summary judgment, Plaintiff argues in his objections that no legitimate penological interest could have existed because had there been a legitimate concern, Defendant would have placed Plaintiff in administrative segregation sooner than March 30, 2005. (*Pl.'s Objections* at ¶¶ 11–15.) The evidence reflects that Plaintiff was released back to general population on March 18, 2004. (*Pl.'s Objections*, Ex. B.) The evidence, however, demonstrates that the investigation was ongoing. (*Maldonado Decl.* at ¶ 10; *DeGeus Decl.* at ¶ 13, Ex. G, bates no. 123.) Defendant Maldonado states that he did not have sufficient information to corroborate Plaintiff's continued active association with BGF until March 2005, and that once he obtained such information, he placed Plaintiff in administrative segregation on March 30, 2005. (*Maldonado Decl.* at ¶ 10.) Even if Plaintiff were correct that he could have been placed in administrative segregation earlier, that fact alone does not mean that Defendant Maldonado had no legitimate penological reason for conducting an investigation

of Plaintiff's gang status and placing him in administrative segregation on March 30, 2005. Plaintiff has failed to offer any evidence to demonstrate that there was no legitimate penological reason for Defendant Maldonado's investigation. Accordingly, the Court **OVERRULES** Plaintiff's objection and **ADOPTS** the Magistrate Judge's recommendation on the retaliation claim against Defendant Maldonado.

### III.    Due Process Claim against Defendant Maldonado

Plaintiff claims that he was denied due process because Defendant Maldonado did not have sufficient evidence to revalidate him as an active member of the BGF prison gang. Due process claims like those asserted here by Plaintiff are subject to the "some evidence" standard set forth in *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). *See Bruce*, *supra*, 351 F.3d at 1287. As the Ninth Circuit explained in *Bruce*, this is the proper standard because placing inmates in administrative segregation is "an administrative strategy designed to preserve order in the prison and protect the safety of all inmates." *Id.* (citing *Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir. 1997)). Thus, the inquiry is whether "there is any evidence in the record" that could support the conclusion that Plaintiff had ties to the BGF at the time Defendant validated him as a member of the BGF prison gang. *Bruce*, *supra*, 351 F.3d at 1287. The Court is not required to "examine the entire record, independently assess witness credibility, or reweigh the evidence." *Id.*

It is undisputed that Plaintiff had previously been validated as a BGF member, but at the time he was transferred to Centinela, he was considered inactive. Because of Plaintiff's inactive status, the regulations provide that only "one reliable source item identifying the inmate as a currently active gang member or associate of the prison gang with which the inmate was previously validated" was required to revalidate Plaintiff. Cal. Code Regs. tit. 15, § 3341.5(6). "Current activity is defined as, any documented gang activity within the past six (6) years." *Id.* The regulations define numerous "source items" that may be used to validate an inmate's association with a prison gang. *See* Cal. Code Regs. tit. 15, § 3378(c)(8).

The Magistrate Judge concluded that there was ample evidence to support Defendant Maldonado's conclusion that Plaintiff was actively involved with the BGF, and thus determined that there was no triable issue of fact on Plaintiff's due process claim. (*R&R* at 12:21–14:8.) In his

opposition, Plaintiff took issue primarily with Defendant Maldonado's use of confidential informants to validate Plaintiff as an active BGF member, arguing that the confidential informant statements were unreliable. (*Pl.'s Opp.* at ¶ 20.) In his objections, Plaintiff again spends an inordinate amount of time asserting that Defendant Maldonado improperly relied on confidential informants to support his validation of Plaintiff as an active BGF prison gang member. (*Pl.'s Objections* at ¶¶ 17-23.) The Magistrate Judge, however, disregarded these statements and still concluded that Defendant Maldonado had more than one reliable source item to revalidate Plaintiff as an active BGF member. (*R&R* at 13:13–14:8.) Thus, the issue is whether, after disregarding the confidential informant statements, some evidence supported Defendant Maldonado's conclusion that Plaintiff was an active member of the BGF prison gang.

The Magistrate Judge identified five source items that did not involve confidential informants and which she concluded were more than sufficient to support Defendant Maldonado's validation of Plaintiff as an active BGF member. However, as previously noted, the regulations require only one source item to revalidate Plaintiff. The first source item identified by the Magistrate Judge that does not involve a confidential informant is a confidential memorandum, dated May 12, 2005, which describes documents and materials found amongst Plaintiff's property, including literature by BGF founder George Jackson, that are consistent with BGF training and recruitment. (*Maldonado Decl.*, Ex. D bates no. 012.) Plaintiff objects to the Magistrate Judge's reliance on this source item because he asserts that no prison official ever told him that he could not possess such materials, and he was informed that these items would not be used as source items to validate him. (*Pl.'s Objections* at 14.) Defendant Maldonado states that he informed Plaintiff that these items would be used as a source item to corroborate his ongoing membership in the BGF. (*Gray Decl.*, *Maldonado's Response to Interrogatory No. 11*, Ex. 4.) Plaintiff relies on Exhibit F, which is attached to his objections, as evidence that prison officials told him they would not use the items as source item to corroborate his association with the BGF prison gang. (*Pl.'s Objections*, Ex. F.) Exhibit F is a chrono, signed by Officer Hill, Assistant Gang Investigator at Centinela State Prison. While the chrono describes the contraband material that was recovered from Plaintiff's cell and informs Plaintiff that if he is found with such items again, they will be considered as independent source items, the chrono makes no

mention of how prison officials intended to treat the recovery of the contraband material. Moreover, the California Code of Regulations adequately describes the sort of source items that may be used in determining gang involvement, and in particular, describes what written material evidences gang activity. *See* Cal. Code Regs. tit.15, § 3378(c)(8)(B). The items recovered from Plaintiff's cell clearly constitute "written material" within the definition of the Regulations. Plaintiff does not deny that he was in possession of such items, nor does he dispute that these items belonged to him. Plaintiff does not offer any evidence that the items recovered in the cell search were not proper source items. Thus, the recovery of these items from Plaintiff's cell was not only reliable evidence of Plaintiff's active involvement within the BGF, it was also a sufficient basis for Defendant Maldonado to revalidate Plaintiff as an active BGF member. Accordingly, Plaintiff's objection that the Magistrate Judge improperly considered this memorandum is **OVERRULED**.

Because only one source item was required for revalidation, and this confidential memo constitutes one source item, Plaintiff has failed to demonstrate a triable issue of fact that Defendant Maldonado lacked "some evidence" to revalidate him. In light of this conclusion, Plaintiff's objections to the other four source items relied on by the Magistrate Judge are **MOOT**. The Court **ADOPTS** the Magistrate Judge's report and recommendation, and **GRANTS** Defendants' motion for summary judgment on Plaintiff's due process claim against Defendant Maldonado.

**IV.    Ex Parte Application for an Order Sealing the Court File**

Defendants' ex parte application consists of a request for an order by the Court to seal the entire court file for the purpose of prohibiting both the public and the Plaintiff from viewing confidential information. Defendants assert that Plaintiff has attached copies of documents from the confidential portion of his central file to various filings with the Court. Defendants contend that these documents contain statements from confidential informants and the identities of those informants. (*Defs.' Ex Parte Application* at 3:10–23.)

"Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). In assessing the merits of a request to seal, the Court should consider "the interests advanced by the parties in light of the public interest and the duty of the courts." *Id.* at

602. In making this assessment, there is a strong presumption in favor of access which "may be overcome 'only on the basis of articulable facts known to the court, not on the basis of unsupported hypothesis or conjecture.'" *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (quoting *Valley Broad. Co. v. U. S. Dist. Court*, 798 F.2d 1289, 1294 (9th Cir. 1986)).

Defendants contend that the information contained in Plaintiff's court filings present a danger to confidential informants and may chill future prison inmates from cooperating with prison officials in investigations of other inmates. (*Defs.' Ex Parte Application* at 5:1–7.) The Court agrees with Defendants that confidential information of this nature poses a danger to the informants who provided statements to prison officials under the guise of confidentiality. *See Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996) ("Prison officials have an interest . . . in preserving institutional safety and may exclude statements from notices and decisions where there is a risk of revealing the identity of an informant."); *Mendoza v. Miller*, 779 F.2d 1287, 1293 (9th Cir. 1985) ("The government interest in institutional safety and an efficient disciplinary system are especially implicated when inculpatory information is provided by confidential informants because, 'revealing the names of informants . . . could lead to the death or serious injury of some or all of the informants.'" (citation omitted)), cert. denied, 476 U.S. 1142 (1986). Moreover, the Court agrees that allowing confidential records to remain open to the public could have a chilling effect on the cooperation of future prison inmates with CDCR personnel in investigations of a sensitive nature. (*See Fischer Decl.* at ¶¶ 14–16.) Plaintiff opposes the Defendants' request, asserting that there is no threat to the safety of these confidential informants. (*Pl.'s Opp.* at 3:18–24.) Based on the facts before the Court, the Court is not convinced that the confidential informants are not in any danger as a result of such information's presence in the public domain. Thus, the Court finds good cause to seal the documents to which Plaintiff has attached confidential information.

Rather than identifying the particular documents that contain the confidential information, however, Defendants merely state that "the examples are too many to count and catalog" and instead ask that the Court seal the entire court file. The Court simply cannot deny the public's right of access to information that they are entitled to view on grounds that Defendants do not wish to undertake the burden of providing the Court with the docket entries that contain confidential information.

Defendants could have sought relief from the Court when Plaintiff first began filing confidential information, yet they failed to do so. Accordingly, the Court **DENIES** Defendants' request to conceal the entire court file. However, the Court **GRANTS** the request to seal docket entries containing confidential information. Defendants shall, within ***7 court days*** of the date of this order, provide the Court with a list of docket entries that contain confidential information, identifying with specificity the particular attachment and how it constitutes confidential information. The Court notes that Defendants request that the Court restrict Plaintiff from accessing his own filings in this matter on grounds that Plaintiff was not originally supposed to have access to his confidential file. Defendants have provided no legal authority for such an extraordinary request, and the Court can find no reason to grant it. Accordingly, to the extent Defendants request that the Court restrict Plaintiff's access to the Court file, the request is **DENIED**. Upon receipt of the Defendants' supplemental brief, the Court shall on its own assess the identified documents for confidentiality. Should the Court agree that such information identifies confidential witnesses, the Court will restrict access to these documents to case participants and public terminal users.

### CONCLUSION

For the reasons stated herein, the Court hereby:

1. **OVERRULES** Plaintiff's objections to the Magistrate Judge's report and recommendation (Doc. No. 254) and **ADOPTS** the Magistrate Judge's report and recommendation (Doc. No. 252) in its entirety;

2. **GRANTS** Defendants' motion for summary judgment (Doc. No. 229);

3. **GRANTS IN PART** and **DENIES IN PART** Defendants' ex parte application for an order to seal the court file (Doc. No. 256).

This order disposes of all claims. Accordingly, the Court **ORDERS** the Clerk of Court to enter judgment in favor of Defendants Zaragoza and Maldonado, and to terminate the case.

**IT IS SO ORDERED**.

DATED:  June 2, 2010

*Michael M. Anello*

Hon. Michael M. Anello
United States District Judge